IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


LEROY ALFORD,
                                     Civil Action
            Plaintiff,               No. 1:22-cv-02856-RBW

    vs.                              July 19, 2024
                                     9:00 a.m.
DENIS R. MCDONOUGH,

            Defendant.
_____


              TRANSCRIPT OF THE STATUS CONFERENCE
                        VIA TELEPHONE
            BEFORE THE HONORABLE REGGIE B. WALTON
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:

        LEROY ALFORD
        PRO SE
        6404 Carrick Place
        Temple Hills, MD 20748

For the Defendant:

        ANNA DAVIS WALKER, ESQ.
        DOJ-USAO
        Civil Division
        601 D Street, NW
        Washington, DC 20530


Court Reporter:   Stacy Johns, RPR, RCR
                  Official Court Reporter

  Proceedings recorded by mechanical stenography, transcript
        produced by computer-aided transcription

**P R O C E E D I N G S**

COURTROOM DEPUTY:  This is Civil Action 22-2856, Leroy Alford versus Denis McDonough.  May I have the parties identify yourselves for the record, beginning with the plaintiff.

MR. ALFORD:  Leroy Alford.

MS. WALKER:  Anna Walker on behalf of the Department of Veteran's Affairs.

THE COURT:  If that's everyone, we're here on the plaintiff's second motion to supplement the complaint that he filed in this case.  And one issue we have to address is whether he exhausted his administrative remedies in reference to that request.  But I guess first we need to address whether this request is moot.

Defense counsel, you suggest that the change that was requested has been made, which would moot the need to supplement the complaint, if supplementation is appropriate.  Is that still your position that the request that he made has, in fact, been satisfied?

MS. WALKER:  Yes, Your Honor.  The VA issued the plaintiff a letter, I believe, in April notifying him that the corrections had been made.  However, I have since realized that that April letter attached the wrong benefits decision.  So in June, on June 25, 2024, the VA resent Mr. Alford a letter updating him, saying the corrections have still been made and here's is the right version of the corrected benefits decision.

So, yes, as of April they made the change, but as of June they provided him with the corrected benefits decision.

THE COURT:  Mr. Alford, what is your response?

MR. ALFORD:  That is not true, Your Honor.

First the agency admits that they didn't comply when they attached the bogus rating decision.  And part of that rating decision alleged that the corrections to the false information that was included on the rating decision was made, and that was not true.

Now, with regards to the 1902(b) that I requested, they provided documentations.  What they did not provide, they applied FOIA exemptions, which means they didn't comply with the requirement of 1902(b) which lists the name of the individual who wrote the Privacy Act document along with the date.

Because that information was not provided, my ability to utilize that document in terms to pursue appeal avenues associated with the determination of the ability to obtain -- well, to (audio distortion) locational goal was not -- I could not submit that appeal.  So my contention is that the agent did not fully comply, because they simply blocked out the signature blank.  So I don't know who signed it, nor do I know what date it was signed.  So I have been adversely impacted to pursue those appeal rights associated with that.

This was not a Privacy Act request -- I'm sorry, a

FOIA request, this was a privacy request.  So I should be able to pursue, use, that document which has the person who made the decision of feasibility goal -- vocational feasibility goal was not possible.  So I should be able to pursue that, but I'm unable to pursue that on appeal because I don't have that information.

And then the counselor also alleged they have submitted a new document.  It is my position that the document that they have attached is basically a fraudulent document and that it is not a -- the rating decision does not comport with the requirements.  It's a fake.  Because I looked in the VBMS even as of last night and there's no rating decision that reflects the date that is indicated that I received.  So it's my assertion that the James Humpharies, the FOIA officer for the National Capitol Region office who provided that document provided fraudulent documents because the statement that he wrote in the letters do not contain the statement that I made.

And the document that he attached to me and provided to me, the agency had lost the jurisdiction because I had appealed the document.  And there's an organization called the DROC.  The DROC is a organization established to handle remands, because the appeal that I pursued, I selected a remand on, selected an appeal option.  The Baltimore regional office lost jurisdiction over that appeal.  So any changes that were made to a rating decision, the Baltimore regional office didn't

have that authority.  The DROC has the jurisdiction under the AMA appeals management law that was recently passed and implemented in 2019.

So it is my contention that the whole documentation that was provided was a farce.  And I will provide documentation to support that argument.

THE COURT:  What's the reply from defense counsel?

MS. WALKER:  Your Honor, I'm looking at the April 19, 2024 letter, which correctly refers to the August 25th, 2023 benefits decision that plaintiff had requested to be corrected. His (audio distortion) mainly focused on this removing of records that was listed in "evidence reviewed" section that he contended did not exist.  The VA has since responded saying that they've corrected it.

As I mentioned, initially they attached the wrong benefits decision.  My belief and understanding is that they sent the corrected benefits decision.  I will follow up on that and just verify it, but the cover letter from April 19th, 2024 is an affirmative statement saying we will grant your request to correct the information that you have identified.  It's just a matter of -- I think at this point the decision has been made to honor his request to correct his records under the Privacy Act.  So now it's just a matter of getting those corrected records into his hands and getting it updated on to the system.

If he's contending it's not there, I can look into it

and just make sure it's there.  However, the agency has made the decision to grant his request.  So regardless of whether or not the documents are currently on the system or not, which I can go back and ensure, the agency as granted him his request which goes to the factor of the fact that this claim -- any Privacy Act claim arising from this complaint that he has that the information hasn't been corrected is not exhausted.

In order to properly exhaust a claim that the agency has failed to correct records, you have to demonstrate that the agency has not only received a request but -- the submitter has not only submitted a request to have the records corrected but then appealed a denial of the decision by the agency to not correct the records.  And here the agency has agreed to correct the records.

So again, even if it's just a matter of administrative back and forth to make sure the records are on the system, the agency has corrected the records.

THE COURT:  One moment while I confer with my law clerk regarding what documentation we have.

(Pause in the proceedings.)

THE COURT:  Government counsel, let me just ask, the documents that you're referencing, were those a part of what you submitted in opposition to his request to supplement?

MS. WALKER:  I believe so, let me see if I can --

THE COURT:  Or are you referencing some documents that

we don't have either?

MS. WALKER:  I'm sorry, Your Honor.  Let me get the exact ECF number.

Okay, so it's ECF number 39-1.  It's the April 19, 2024 decision.  And that decision is from the agency confirming that it will make the corrections to plaintiff's August 25th, 2023 rating decision as requested in his August 20th, 2023 Privacy Act request.

THE COURT:  In that corrected document that you say in this letter will be corrected, has that been provided to Mr. Alford, and do we have that?

MS. WALKER:  So, I don't -- okay, so I was under the impression that it had been provided to him on June 25th, 2024.  But the version that I have is still not the correct version, and I'm looking at it now.  This is not something that the Court has, this is something that I have from the agency.  So I will go back and make sure that the corrected August 25th, 2023 rating decision is provided to him.

But according to this April 19th, 2024 letter, it references is August 28th, 2023 Privacy Act request and confirms that the August 25th, 2023 rating decision will be amended in accordance with his request.  So I just need to hunt down where that directed benefits decision is and provide it to him, because it seems like if it was provided -- I don't have a copy of it, but it seems like the agency has tried now twice to

get it to him, and I will make sure it's done.

THE COURT:  Mr. Alford, do you have this document she's referencing?

MR. ALFORD:  I'm not sure what she's referencing, Your Honor.  I apologize, sir.  If we turn to ECF number 39-1, 39-1, page 2:  James Humphrey has authored a document that contains false information.

I did not submit a FOIA request on August 28th, as cited, and use these references.  These are the references that the agency conveniently has written.  And the second paragraph, this email is an official request, there's nothing that says that I am requested under FOIA -- Privacy Act --

THE COURT:  Let me just ask.  The documents or document you're asking be corrected, have you received corrected documents consistent with the request that you made?

MR. ALFORD:  I have received documents that I cannot find that I assert is a bogus document, sir.

THE COURT:  This letter is dated April 19th, 2024.  Have you received any documents after that date which purport to be corrected documents consistent with what you requested?

MR. ALFORD:  Based upon your statement, the answer is no, sir.

I caveat that because the document that was attached to their follow-on letter is the rating decision that does not exist, nor does any of the contentions that are cited on there.

And because of that is my assertion that this is a farce, because the rating decision will have evidence.  Evidence would be cited.  In the documents I received, that information is not provided.

THE COURT:  Well, it seems to me the objective is to get the records corrected, if corrected records is what should be done.  And I don't know -- based upon what I'm being told by government counsel, I don't have that document.  You don't appear to have that document.  So I don't know whether what you've requested has, in fact, been accomplished.

And that would, it seems to me, obviate the need for this litigation if, in fact, they have done what they say they're going to do.  I don't know if that's happened.  You apparently don't know that that's happened.  So the government needs to get you the documentation that would show the correction, and I need to see what that is also so you'll be in a position to tell me whether what they provided to you is consistent with what you were requesting.  I don't see how I'm in a position to address that at this point until I see exactly what they're referencing.

MR. ALFORD:  Your Honor, I provided somewhat untimely exhibits today.

THE COURT:  I obviously haven't seen those so I can't --

MR. ALFORD:  And I emailed those to agency counsel

also.  And the documents that is submitted will certainly clear up -- everyone can see what's -- the truth.

THE COURT:  But my question, sir, is did you receive this corrected document that they reference in this letter? Have you received that?

MR. ALFORD:  I have received documents from the agency, and I responded back to them stating that the information contains false information.  So the letter that Mr. Humphrey cited is invalid, because I did not submit a Privacy Act during the month that's listed.  I submitted a Privacy Act in September, and they have not responded to that.

MS. WALKER:  Your Honor, if I may just interject really quickly.

THE COURT:  Go ahead.

MS. WALKER:  And I apologize.  So what I understand is Mr. Alford is playing semantics.  He submitted a Privacy Act request on August 28th, 2023, and he is claiming in his motion for leave to supplement his complaint that he wants to add Privacy Act claims related to that August 28th, 2023 Privacy Act request.

He then subsequently resubmitted it on September 14th, 2023.  And he submitted it in another format with it being signed, and he's now alleging that that was the Privacy Act request and not the August 28th, 2023 Privacy Act request.  So even though the agency continues to reference his August 28th,

2023 request in communications by acknowledging the request the day after it was received and by then notifying him that the corrections will be made according to his request, that is still satisfying his resubmission request on September 14th, 2023, because the submission request is the same thing as his initial August 28th, 2023 request.

So to the extent he's claiming that any of the agency's communications with him that reference the August 28th, 2023 request are fraudulent because they refer to the August request, not his September 2023 resubmission, that's just a matter of semantics.  If the agency --

MR. ALFORD:  Your Honor.

THE COURT:  Hold on, Mr. Alford.  Hold on.

Go ahead.

MS. WALKER:  The agency's position is that if the agency has corrected the records that he has requested be corrected according to his August 28th, 2023 Privacy Act request that was resubmitted on September 14th, 2023, then the request would still be moot -- I'm sorry, any claims related to this September 2023 request would still be moot because the corrections are being made consistent with that request.

THE COURT:  Mr. Alford, are you making one request for correction, or are you making two separate requests?

MR. ALFORD:  The correct -- they are separate requests that I asked.  The first one in August --

THE COURT:  But are they requesting the same corrections, or are they requesting different corrections?

MR. ALFORD:  They are not the identical ones.

THE COURT:  But in reference to the records you want requested, are they requesting different corrections or the same corrections?

MR. ALFORD:  They are requesting different because the August request, the email is labeled CUE -- corrections to be made on the CUE.  A CUE is a clear and unmistakable error.  So there I was referring to corrections to the actual rating that I submitted to the regional office.

After the decision was made, the rating decision was made, I have the avenue, as a veteran, to appeal through the Appeals Management Act, or I can submit corrections because of the decision, what's called a clear and unmistakable error. That's one avenue I can pursue using different laws that are totally not associated with Privacy Act or FOIA Act.  And that's the purpose of that email.

And subsequently, I filed an appropriate form to request correction about the rating decision.  Along with that, afterward, I filed under the Privacy Act to have the records corrected.  So I pursued two separate avenues using different laws --

THE COURT:  Hold on.  Is it the same information that you're asking be corrected, or are you asking for different

information be corrected?  That's what I'm confused on.

MS. WALKER:  Your Honor, if I may direct the Court to -- it's ECF docket number 44, page 27.

THE COURT:  Okay.  Let me find it.  Hold on.  Was it submitted with a particular filing, because we're having a problem finding it?

MS. WALKER:  It's just a main docket entry for docket 44.  There's no attachments to it.  You just have to scroll to the bottom of the document.

THE COURT:  I'll have my law clerk go and find it. Hold on.

MR. ALFORD:  What page are you referring to?

MS. WALKER:  Mr. Alford, I'm referring to page 27. And I'll be referring to page 27 through 29.

THE COURT:  Okay.  My law clerk is going to try and pull it up, so hold on.

(Pause in the proceedings.)

THE COURT:  Okay.  We're still having some difficulty finding the document that's being referenced.  And that's ECF what, again?

MS. WALKER:  It's ECF 44.  It was submitted on May 28th, 2024, or I guess it was filed.  It was entered on May 30th, 2024.

THE COURT:  So are you referencing the plaintiff's response to your response opposing his second motion to

supplement?

MS. WALKER:  Oh, yes.  This is the reply brief to our --

THE COURT:  It's your reply?

MS. WALKER:  It's his reply, Your Honor.  Plaintiff's reply.

THE COURT:  Okay.  And I have his reply.  It's 18 pages -- 19 pages, actually, I guess.

MS. WALKER:  Right.  At the end he adds -- the whole docket entry is actually 45 pages because he attaches exhibits at the end.

THE COURT:  Right.

MS. WALKER:  And the exhibit that starts, I guess, on page 27 is the September 14th, 2023 letter that he's discussing right now.  The letter asks that the agency correct information consistent with -- he says, I'm writing to request the removal of false information listed on my 25th of August 2023 rating decision.

And then he attaches his August 28th, 2023 email to that September 14th, 2023 letter, which means it's essentially just asking the agency to correct what he references in his email sent on August 28th, 2023.

MR. ALFORD:  That's not my position, Your Honor.  On page 29 -- yes, on page 29 --

THE COURT:  I'm having difficulty following where

you-all are directing me, because what I have doesn't have those additional numbers on them.  Your reply goes up to page 19.  And then there are exhibits attached but there's no number, as far as pages numbers are concerned, consistent with the filing on what I have.  So I'm having difficulty really understanding what you-all are specifically referencing.

If, in fact, you have received -- and I don't know if that's the case or not -- everything that government counsel is referencing, and you're saying that that still doesn't correct what you were making a request be made and I can't really discern exactly what is being referenced, I think our only option is we're going to have to have an in-court hearing when you-all can point out to me exactly what documents you're referencing.  Because as I say, you-all are referencing numbers that are not in the documents that I have, so I'm having a hard time following what you-all are asking me to look at.

MS. WALKER:  I'm sorry, Your Honor.

THE COURT:  So I'm going to have to schedule a hearing when you-all have to come to court when you-all can point out exactly what you're making reference to so I can try and assess what the respective positions are.

Again, before we have that hearing, if there is, in fact, documentation that's being referenced that hasn't either been provided to Mr. Alford or hasn't been provided to the Court, that needs to be provided.

How long will it take for that to be done?

MS. WALKER:  I can get it done by the end of this month.

THE COURT:  Let me see when I can set this for a hearing, because we need to get this resolved as quickly as possible.

I'm here that first week of August.  Well, I'm here the 1st and 2nd of August, and then I'm here the week of the 4th of August but then I'm away for two weeks.  So I don't know if it's going to be enough time to have a hearing on this during the first full week of August, which is August 4th.  If not, then we'd have to set the hearing during the week of August 18th when I'll be back from vacation.

MS. WALKER:  Your Honor, if you would prefer to wait until the week of the 18th when you're back from vacation just for assurance purposes, that's fine for me.  My goal is to get with the agency today and to make sure that the corrected benefits decision goes out to Mr. Alford as the agency has already decided to honor.

THE COURT:  Mr. Alford, what's your position about when we should hold the hearing?  Like I say, I've indicated what my schedule is.  If government counsel is saying they can provide all the documentation that they should provide to you by the end of this month, when would be the best time for you to come in for a hearing, because we're going to have to do it

in court so you-all can point out to me exactly what documents you're making reference to.

MR. ALFORD:  Your Honor, at this point I don't have any specific dates that would conflict in August.  It's my position that the agency has fabricated documents and that the agency -- there's another organization that has issued decisions that is inconsistent with what the regional office is projecting.  It is my position, that I stand by, that the agency as authored fraudulent documents.  And they have inserted into the rating decisions emails -- reference to emails from a staff attorney who's assigned to the litigation office, which is totally inappropriate for a rating decision, and it is inconsistent with the law because the regional office has lost jurisdiction once I appealed the rating decision to the Board of Veteran's Appeal.  And I appealed that information on 19 October -- 18 October 2023.  I emailed documents with the Court and that listed as Exhibit T, and I was presuming once those documents are processed today, that will also support my argument that -- exactly what request was being made.

So whatever date you decide, Your Honor, it should be available for me.

THE COURT:  Well, what's the government's position about this loss of jurisdiction position that he's taking, that even if -- I assume what's being suggested is that even if there has been some correction made, that those corrections are

not adequate because an entity that's not authorized to make the corrections made the corrections.  I assume that's what is being suggested.

MS. WALKER:  This is the first time, Your Honor, I'm hearing about this argument.  It's not been included in any of the briefings previously.  So I don't have -- I don't understand the argument that he's making, and I don't have a response to it at this time.

The documents that I was trying to refer the Court to, and I apologize for referencing the ECF numbers that may not be so clear, but it is Exhibit A attached to Mr. Alford's reply brief.

And if the Court finds it, you can see that the records -- the questions that Mr. Alford is asking is simply the removal of information -- I'm sorry, of records listed in the evidence reviewed for the benefits decision that he's claiming do not exist.

So I don't see how and he doesn't explain how the inclusion of these exhibits in the benefits decision have any effect on his ratings decision.  So he can claim that the element of adverse action here is missing, depending on where we are in the Privacy Act, which honestly I don't think he's even identified what cause of action he's trying to raise under the Privacy Act.

So there's a lot of things wrong with his Privacy Act

claim beyond just the fact that it is moot, that he hasn't exhausted it.  He hasn't identified what claim for relief he's seeking under the Privacy Act in the first place, and he can't meet the elements of it in any of the filings (audio distortion).

So I know that is a long-winded answer, Your Honor, to your question about jurisdiction, which I don't have.  But I'm trying to the extent possible steer the Court to where the meat of the issue is here, which is that plaintiff simply has not stated any Privacy Act claim that is viable related to his August 28th, 2023 Privacy Act request, regardless of whether the agency has provided the corrected documents to him, which it has indicated that it is honoring.

THE COURT:  Are you suggesting that we need to proceed to summary judgment briefing?

MS. WALKER:  I'm suggesting, yes, that the Court deny plaintiff's request for leave to amend his complaint to add Privacy Act claims that are futile and that we could proceed now to summary judgment on the information requested or at issue in this case, which comprised of FOIA information requests that are at issue.

THE COURT:  Okay.  It's kind of confusing to me at this point, but it seems to me that the appropriate way to proceed is to first make sure that Mr. Alford and the Court has the documents that you reference that you say does, in fact,

provide the corrections that he has requested.  If, in fact, that is the case, then it seems to me that I don't have to move on to any other issue because his Privacy Act request would be mooted, if, in fact, all the requests that he has made have, in fact, been satisfied.

If we go beyond that, then I think the next question would be whether, despite everything we said so far, he hasn't made a claim, as you allege, which we'd only be able to address on a motion for summary judgment.  But, obviously, I have to first address the issue of supplementation because we have to have a full record that the summary judgment motion would be predicated on, plus he's made a request for discovery, and I'm not in a position at this point to grant a request for discovery prior to the submission of summary judgment briefing and whether would necessitate some type of discovery being authorized, which is rare in these type of case, but I'm not in a position to assess whether any discovery would be appropriate before summery judgment briefing has been submitted to me.

So I will go ahead and schedule August 21st at 10:00 a.m.  We will need to get started on time because I have a doctor's appointment at 2:30 so I have to leave here at least by noon.  Hopefully in that hour and a half we can get done what we need to do in reference to this supplementation issue and then move on the summary judgment briefing beyond that, if, in fact, that's necessary.

And on this issue regarding jurisdiction and whether the appropriate entity has issued documents that you say they didn't have the authority to issue, I'm not familiar with what you're saying, and government counsel says she's not familiar with what you're saying, and we don't have any briefing in reference to that.  So if that's a issue that you're raising, I guess it's something that will have to be addressed at some point in the future, because we don't have anything before us on that issue.

MR. ALFORD:  Your Honor, I've been certified to be a -- I'm a critic at -- veteran's officer.  So the organization that I'm referring to, they issue -- the rating decision is the distinct decision review operation center.  That --

THE COURT:  I'm going to need to cut you off.  I'm not saying that you're not astute about what you're representing, all I'm saying is that information has not been provided to me, and government counsel says she doesn't know exactly what you're referencing.  So if you're raising an issue along those lines, that's something that's going to have to be briefed at some point so it can be researched.  I just don't know what you're referencing.

MR. ALFORD:  I've emailed agency counsel these documents.  If she's alleging that she is ignorant to that, then I have the emails to show that those documents were provided to her and the question that I pointed out to her, she

essentially ignored that when I raised these arguments to her.

THE COURT:  Okay.  We'll convene in court on the 21st of August.  Counsel and Mr. Alford will need to be present, and any documents that you-all want to reference, those will need to be in court so that you can show me exactly what you're making reference to.

But government counsel, try and get those documents to Mr. Alford that you made reference to that you say do, in fact, address the corrections he was making, and we'll go forward at that point.

MS. WALKER:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.

MR. ALFORD:  Thank you.

(Proceedings concluded at 9:41 AM)

C E R T I F I C A T E

I, Stacy Johns, certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

Please note: This hearing occurred via telephone and is therefore subject to the technological limitations of reporting remotely.

/s/ Stacy Johns                    Date: August 14, 2024

Stacy Johns, RPR, RCR
Official Court Reporter