UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEROY ALFORD,

        Plaintiff,

    v.

DENIS MCDONOUGH,
Secretary of Veterans Affairs,

        Defendant.

Civil Action No. 22-2856 (RBW)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF**

Defendant, Denis McDonough, in his official capacity as Secretary of Veterans Affairs, respectfully responds to pro se Plaintiff's supplemental brief (ECF No. 66), which alleges that the Department of Veterans Affairs ("VA" or "Agency") is in violation of the Privacy Act because its response to Plaintiff's August 28, 2023 request to amend records failed to comply with certain provisions of the internal VA Handbook.[1] *See* Pl.'s Suppl. Br. ECF No. 66. Because an agency's internal handbooks, however, have no binding effect of law on the United States, Plaintiff's supplemental brief is entirely without merit. Moreover, Plaintiff has failed to point to any provision under the Privacy Act, with which he could allege the VA is incompliant, let alone that gives rise

---

[1]      On September 25, 2024, Plaintiff submitted a separate brief titled "First Response Motion for Extension of Time and Reasonable Accommodation," ("Plaintiff's First Response"). *See* ECF No. 65. "Plaintiff's First Response," does not address what the Court ordered the parties to address in supplemental briefing following the Motion Hearing on September 23, 2024—namely whether there are any "agency regulations or rules that plaintiff alleges the defendant was required to follow in responding to his Privacy Act request." Order, ECF No. 64. Therefore, because the Court has neither invited nor asked the parties to address the new allegations that Plaintiff raises in "Plaintiff's First Response," Defendant, likewise, does not address "Plaintiff's First Response" herein. If necessary, Defendant will prepare a response to "Plaintiff's First Response" in fourteen days from its filing, or by October 8, 2024. *See* LCvR 7(b) (allowing for any opposition to be filed within fourteen days after receipt of any motion).

to a cause of action on which he could sue. To the contrary, the Agency has acted correctly under the Privacy Act and its own regulations by amending Plaintiff's records as requested and consistent with the procedures for review set by the office having jurisdiction over the records as explained in the previously filed declaration of Natalie Souza. *See* 38 C.F.R. 1.579; Souza Decl., ECF No. 53-2.

## BACKGROUND

In this Freedom of Information Act and Privacy Act Case, Plaintiff moved in February 2024 to supplement his Complaint for a second time to add claims related to Plaintiff's allegation that the VA failed to respond to Plaintiff's August 28, 2023 Privacy Act Request.  *See* ECF No. 29 (Second Motion to Supplement); ECF No. 31 (Supplemental Brief); ECF No. 32 (Errata). On September 23, 2024, the parties appeared for a second motion hearing before this Court to address the sufficiency of Plaintiff's proposed supplemental claims. *See* June 27, 2024 Min. Order; Aug. 22, 2024 Min. Order. At this motion hearing, the Government demonstrated how the VA corrected Plaintiff's records as sought in Plaintiff's August 28, 2023 Privacy Act request, rendering any claims related to that request moot. *See* Ex. 1, Sept. 23, 2024 Tr. ("Tr."), 26:11-29:13. Specifically, the Government explained that Plaintiff's August 28, 2023 Privacy Act request asked that the Baltimore Regional Office correct clerical errors to the names and descriptions of records it reviewed as evidence to support its August 25, 2023 rating decision ("Original Rating Decision"). *See id.* First, Plaintiff requested that one Neurophysiological Exam Evaluation listed under the "Evidence" section of the Rating Decision be corrected or removed because the record was incorrectly described as a "Private Treatment Records" and listed twice. *See id.* Next, Plaintiff requested that one record dated August 19, 2022, and also listed in the "Evidence" section of the

Rating Decision be corrected to remove any reference to "ataxia and dysmetria" as he claimed that the August 19, 2022 record did not address those ailments. *See id.*

At the hearing, the Government further explained that, on March 28, 2024, the Baltimore Regional Office issued an amended rating decision ("Amended Rating Decision"), that included the corrected names of records under the "Evidence" section. Specifically, the Neurophysiological Exam Evaluation was recharacterized from a "Private Treatment Record," to a "VAMC Washington D.C. Treatment Record" and the line listing this record twice was removed. *See id.* In addition, the August 19, 2022 record that previously included reference to "ataxia and dysmetria," was corrected to remove those references, as Plaintiff requested. *See id.* The remainder of the Amended Rating Decision left the "Decision" and "Reason for Decision" sections blank because the Baltimore Regional Office determined that nothing about these clerical changes made to the Evidence section altered the Regional Offices' decision or the reasons for the Original Rating Decision. *See id.* Both Plaintiff's Original Rating Decision and Amended Rating Decision are now available to review together in Plaintiff's file maintained by the VA under its Veterans Management Benefits System. *See id.* at 30:23-31:9.

The Government further noted that the Baltimore Regional Office did not purge the Original Rating Decision, which Plaintiff had appealed to the Board of Veterans Appeals on the same day he made his Privacy Act Request. *See* Tr. 12:18-14:8; *See* Def.'s Resp. to Suppl. Br. Regarding Jurisdiction ("Def.'s Resp. on Jurisdiction"), ECF No. 57, at 6 n.2 (noting August 28, 2023 as the date when Plaintiff appealed his August 25, 2023 Rating Decision to the Board). The Government further explained that while that appeal was pending, the Baltimore Regional Office issued its Amended Rating Decision. *See* Tr. at 46:12-16; Def.'s Resp. on Jurisdiction, at 6 n.2 (noting that the Board issued its decision regarding Plaintiff's appeal of the Original Rating

3

Decision on April 22, 2024). On April 22, 2024, the Board rule favorably for Plaintiff on the merits of the original Rating Decision, *see id.*, but noted that Plaintiff could move for supplemental review to address any additional evidence to the extent added by the Regional Office's Amended Rating Decision.[2]

At the motion hearing, however, Plaintiff continued to insist, nonetheless, that the VA's Amended Rating Decision was somehow violative of the the Privacy Act. At the end of the hearing, the Court therefore directed Plaintiff to submit to the court "why [Plaintiff] believe[s] that what [the VA has] done is not in compliance with the Privacy Act," Tr. at 55:11-13. Specifically, the Court stated that with regard to Plaintiff's specific requests made to correct inaccurate information in his Rating Decision, if "there was something more that [the VA was] required to do and [it] didn't do . . . to submit [that requirement to the Court]." *Id.* at 51:4-10.

At 11:22pm on September 25, 2024, Plaintiff submitted to undersigned counsel his brief addressing this Court's instruction to submit any additional requirements that the VA was required to take to comply with the Privacy Act in response to its correction of Plaintiff's Rating Decision as Plaintiff requested. *See* Ex. 2, Sept. 25, 2024 Email from Leroy Alford to Anna Walker

---

[2]     Defendant will not attach Plaintiff's April 22, 2024 Decision to this filing, out of an abundance of caution for Plaintiff's privacy interests but can submit it to the Court if directed. The relevant portion, however, the decision, states:

> In this regard, the Board notes that evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the appeal it may not consider this evidence in its decision. *See* 38 C.F.R. § 20.300. If the Veteran would like VA to consider any evidence that was submitted that the Board could not consider, the Veteran may file a Supplemental Claim (VA Form 20-0995) and submit or identify this evidence. *See* 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. *Id.* Specific instructions for filing a Supplemental Claim are included with this decision.

(attaching Plaintiff's Supplemental Brief). Plaintiff's response relies exclusively on provisions included in an internal VA Handbook. *See* Pl.'s Suppl. Br. However, an agency's internal regulations have no binding effect of law on the United States, and thus Plaintiff has failed to point to any provision under the Privacy Act, with which he could allege the Agency was incompliant, the Court should find that the VA's Amended Rating Decision corrected the records Plaintiff requested in his August 28, 2023 Privacy Act request as required under the Privacy Act, and therefore any claims based on that request that Plaintiff seeks to add to this Complaint are moot.

## LEGAL STANDARDS

Under the Privacy act, "[e]ach agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination bout any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). When a request to correct records, however, is submitted, the Privacy Act requires agencies to take certain steps to respond to that request, including to "acknowledge in writing such receipt" of the request no later than ten days after the date of receipt (excluding weekends and legal public holidays) and to "promptly. . . make any correction of any portion thereof which the individual believes is not accurate, relevant, timely." *Id.* § 552a(d)(2). There are no other requirements set forth by the Privacy Act that state when or how corrections to the portions of the amended records need to be made. Rather, the Privacy Act provides that

> [E]ach agency that maintains a system of records shall promulgate rules . . . which shall . . . establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be

5

> necessary for each individual to be able to exercise fully his rights under this section.

*Id.* § 552a(f)(4).

As permitted by the Privacy Act, VA regulations further provide that when a request to amend records is received the VA acknowledges the request within ten days of receipt of such request (excluding weekends and legal public holidays). *See* 38 C.F.R. § 1.579(a). The VA regulations further provide that the VA will then "will complete the review to amend or correct a record as soon as reasonably possibly, normally within 30 days from receipt of the request (excluding [weekends], and legal public holidays)." *Id.* Finally, the regulations also provide that when the VA agrees to correct records as requested, it must do so promptly by "correct[ing] any part thereof which the individual believes is not accurate, relevant, timely or complete." *Id.* Again, there is no other requirement set forth by VA regulations that state when or how corrections to the portions of the amended records need to be made. In addition, the regulations further delegate responsibility for establishing procedures for reviewing amendment of records request to the "office having jurisdiction over the records." *Id.*

## ARGUMENT

In his supplemental brief, Plaintiff relies exclusively on provisions of an internal VA Handbook to show that the VA purportedly failed to comply with the Privacy Act. *See* Pl.'s Suppl. Br. Specifically, Plaintiff alleges that Amended Rating Decision, which corrected records described in Plaintiff's August 28, 2023 Privacy Act request, was not issued in accordance with VA Handbook 6300.4 "Procedures for Processing Requests for Records Subject to the Privacy Act," and therefore, the VA is not in compliance with the Privacy Act. *See id.*; *see also* VA Publications, VA Handbooks https://www.va.gov/vapubs/search_action.cfm?dType=2 (last visited September 26, 2024). But Plaintiff's argument fails for a number of reasons.

6

*First*, as already stated, the VA's internal regulations regarding its procedures for responding to an amendment of records request are merely intended to provide guidance to employees and do not have the force and effect of law binding on the United States. *See Murphy v. United States*, 121 F. Supp. 2d 21, 26 (D.D.C. 2000), *aff'd*, 64 F. App'x 250 (D.C. Cir. 2003) (finding that a Secret Service manual discussing internal investigations were not binding on the United States); *see also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (noting that an internal procedural manual or guide has no legal force and is not binding on the Social Security Administration, even if it is used by thousands of SSA employees). This means that a violation of the VA Handbook, alone, does not amount to a violation of the Privacy Act. Nor, moreover, does the Privacy Act provide any individual with any cause of action based on an agency's failure to abide by its own policies and procedures regarding responding to requests to amend records. *See* 5 U.S.C. § 552a(g); *Cf. Brown v. Hayden*, Civ. A. No. 18-2561 (BAH), 2020 WL 6392746, at *16 (D.D.C. Nov. 2, 2020) (noting that a federal statute which authorized the Library of Congress to promulgate antidiscrimination regulations did not create a private right of action to sue for violations of those regulations).

*Second*, nor has Plaintiff pointed to any provision under the Privacy Act that the VA violated. *See generally* Pl.'s Suppl. Br. Instead, Plaintiff alleges that, under the VA Handbook 6300.4, the Baltimore Regional Office that issued the Amended Rating Decision was (1) required to complete a review of his amendment request within thirty days; (2) obliterate the earlier version of the corrected record; (3) annotate the amended version as "Amended, Privacy Act, (date), (signature and title of amending official); and (4) notify the Board of Veterans' Appeal of the Amendment. *See id.* But even if the Baltimore Regional Office failed to comply exactly with each guideline Plaintiff identified, nothing in the Privacy Act requires the VA to do the same. *See*

*generally* 5 U.S.C. § 552a. Instead, the Privacy Act merely requires agencies to acknowledge in writing within ten days an amendment of records request and to make any corrections of any portion of records "promptly." *Id.* § 552a(d)(2). And even if an agency fails to abide by these discrete provisions of the Privacy Act, as Defendant previously discussed in its brief opposing Plaintiff's second motion for leave to supplement (ECF No. 39), such violation, alone does not give rise to a cause of action for failure to amend records, or any other cause of action under the Privacy Act. *See generally* Def.'s Opp. Br., ECF No. 39. Thus, because Plaintiff has not pointed to any provision under the Privacy Act by which the VA is not compliant, Plaintiff has failed to do what this Court specifically instructed, which was to "show . . . why [Plaintiff] believe[s] that what the [VA] has done [to correct Plaintiff's Rating Decision as requested] is not in compliance with the Privacy Act." Tr. at 55:11–13.

*Third*, and relatedly, the VA has complied with all provisions under the Privacy Act when amending Plaintiff's Original Rating Decision in this case as Plaintiff described in his August 28, 2023 Privacy Act request. Thus, the Court should find any claims related to this August 28, 2024 Privacy Act request moot. Here, for example, the VA complied with the Privacy Act by acknowledging Plaintiff's August 28, 2023 Privacy Act request the very next day, and then corrected his records as requested on March 28, 2024. *See* Souza Decl. ¶¶ 8, 11. Nor is the VA liable to any failure to amend claim, as it did not deny Plaintiff's request, nor has Plaintiff exhausted his administrative appeal remedies to raise such a claim. *See* 5 U.S.C. § 552a(d)(2)-(3), (g)(1)(A); *Haase v. Sessions*, 893 F.3d 370, 373 (D.C. Cir. 1990); *see also* Def.'s Opp. Br. at 10–12 (describing how Plaintiff has not sought administrative review of the VA's adjudication of Plaintiff's Privacy Act request, which is jurisdictional (citing *Lopez v. Nat'l Archives & Recs. Admin.*, 301 F. Supp. 3d 78, 89 (D.D.C. 2018)). Likewise, to raise any other claim for failure to

maintain records or for failure to comply with any other provisions under the Privacy Act, a plaintiff must show that the Agency's violation was intentional or willful. *See id.* § 552a(g)(4). But in this case, the VA cannot be deemed to have intentionally or willfully violated the Privacy Act because it timely acknowledged Plaintiff's request and did, indeed, correct Plaintiff's records as requested. *See* Def.'s Br. at 16–17.

The VA's response to Plaintiff's August 28, 2024 request is also in compliance with its own regulations. Again, under those regulations, the VA acknowledged Plaintiff's request the very next day, satisfying the ten-day business rule requirement. *See* Souza Decl. ¶ 8. In addition, while VA regulations provide that the VA should correct records as requested within thirty days, this is just a guideline, as the regulations also provide that such correction be made "as soon as reasonably possible." 38 C.F.R. 1.579(a). Importantly, the VA regulations also delegate to the office with jurisdiction over the record the responsibility to establish procedures for reviewing amendment of records request. *See id.* at 1.579(b). And as Ms. Souza's declaration explains, the Baltimore Regional Office's procedures for amending records requests of a Rating Decision is to issue an amended rating decision, which includes only the portions of the amended decision affected by the amendment records request. *See* Souza Decl. ¶¶ 11, 14–15. Even if the Baltimore Regional Office failed to abide by the VA's Regulations, which it did not, such violation alone, like a violation of its handbooks, is not sufficient to establish a violation of the Privacy Act, to render the VA's actions non-compliant with that Act. *See Terveer v. Billington*, 34 F. Supp. 3d 100, 122–23 (D.D.C. 2014) (dismissing employee's claim against the Library of Congress for violation of its regulations because the employee had no cause of action and had not shown that the Library of Congress had waived sovereign immunity as to such claims).

There is one additional point to make regarding the VA's compliance with the Privacy Act and its own regulations, which is to note that the VA's response to Plaintiff's August 28, 2023 Privacy Act Request is in keeping with other important provisions under the Privacy Act that should not be overlooked. Specifically, Plaintiff has complained that the Baltimore Regional Office failed to purge his records of the original Rating Decision when it issued its Amended Rating Decision. *See* Pl.'s Suppl. Br. at 3. Again, there is no provision under the Privacy Act that requires this, and to the contrary, by preserving Plaintiff's original Rating Decision along with Plaintiff's Amended Rating Decision, the VA arguably assures it would remain compliant with another provision under the Privacy Act, which is to "maintain all records which are used by the agency in making any determination bout any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Indeed, on the same date Plaintiff submitted his Privacy Act Request, he also appealed his Original Rating Decision to the Board of Veterans Appeals, which reviewed that decision on the merits. *See* Tr. at 46:12-16; Def.'s Resp. on Jurisdiction, at 6 n.2. Preserving both the Original Rating Decision and the Amended Rating Decision ensured that Plaintiff's records would be maintained accurately and fairly for Plaintiff in the determination pending with the Board. *See* Tr. at 15:2-17.

As a final note, even if Plaintiff could somehow show that the Privacy Act obligates the VA to act according to the provisions included in the VA Handbook, and that the VA failed to do so, Plaintiff cannot show the minimum constitutional requirement of injury necessary to establish standing to raise these claims in this Court. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) ("To qualify for standing, a claimant must present an injury that is [1] concrete,

particularized, and actual or imminent; [2] fairly traceable to the defendant's challenged behavior; and [3] likely to be redressed by a favorable ruling.").

Here, for example, even if the VA did not make the corrections to Plaintiff's records within thirty days after receiving Plaintiff's amendment of records request, Plaintiff cannot establish any harm caused by the fact that these corrections were eventually made, albeit, beyond those initial thirty days. Second, for example, Plaintiff cannot establish that a failure to "obliterate" his Original Rating Decision when the VA issued its Amended Rating Decision caused him any concrete harm. To the contrary, the Amended Rating Decision did not change anything substantive about Plaintiff's Original Rating Decision, including the decision itself and the reasons for the decision. Thus, maintaining a complete Original Rating Decision ensured, for record-keeping purposes, that those sections remained part of Plaintiff's records. But even if the Amended Rating Decision had changed the Original Rating Decision substantively, this did not affect Plaintiff's receipt of a favorable decision from the Board of Veterans Appeals when it reviewed that Original Rating Decision on appeal and the Board further noted that if Plaintiff wanted, he could petition for a supplemental review of the Amended Rating Decision if it proved to introduce new evidence. *See Supra* note 2. Relatedly, Plaintiff cannot show that he was harmed by any purported failure by the Baltimore Regional Office to notify the Board of Veterans Appeals of his Amended Rating Decision, as the Board, as just indicated, appeared to reference the Amended Rating Decision in its April 22, 2024 Order. *See id.* Finally, Plaintiff cannot establish that the failure to annotate the Amended Rating Decision precisely as described by the VA Handbook caused him any injury as both rating decisions are still preserved in Plaintiff's records, along with the June 25, 2024 letter from the Baltimore Regional Office notifying Plaintiff that the Amended Rating Decision was

11

issued to correct information in Plaintiff's Original Rating Decision as Plaintiff's described in his

August 28, 2023 Privacy Act Request. *See* Tr. 30:23-31:9; Souza Decl. ¶ 13 & Ex. E.

## CONCLUSION

For the reasons discussed above, Plaintiff's supplemental brief regarding any further

purported violations of the Privacy Act lacks merit. Therefore, the Court should deny Plaintiff

leave to supplement his Complaint for a second time to add claims related to a Privacy Act request

that is entirely moot.

Dated:  September 27, 2024                                Respectfully submitted,
         Washington, DC

                                                   MATTHEW M. GRAVES, D.C. Bar #481052
   United States Attorney

   BRIAN P. HUDAK
   Chief, Civil Division

By: _____ /s/ *Anna D. Walker* _____
   ANNA D. WALKER
   Assistant United States Attorney
   601 D Street, NW
   Washington, DC 20530
   (202) 252-2544

*Attorneys for the United States of America*

12