UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEROY ALFORD,

        Plaintiff,

    v.

DOUGLAS A. COLLINS, Secretary of
Veterans Affairs,

        Defendant.

Civil Action No. 22-2856 (RBW)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Factual Background ...........................................................................................................1

Legal Standard ................................................................................................................1

    I.    DEFENDANT CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE RECORDS ...........................................................................3

        A.    Legal Standard .....................................................................................3

        B.    Defendant's Search...............................................................................4

    II.    DEFENDANT PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTIONS 5 and 6....................................................................................6

        A.    Exemption 5 Withholdings .......................................................................7

        B.    Exemption 6 Withholdings .....................................................................11

    III.    DEFENDANT PROPERLY CONCLUDED THAT NO FURTHER SEGREGATOIN OF THE RESPONSIVE RECORDS IS POSSIBLE ...............14

    IV.    DEFENDANT HAS FUFILLED HIS OBLIGATIONS UNDER THE PRIVACY ACT FOR PLAINTIFF'S MAY 10, 2021 REQUEST .......................................15

conclusions ...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Def.*,
    628 F.3d 612 (D.C. Cir. 2011) ............................................................................................... 2

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................................... 2

*Armstrong v. Exec. Off. of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ............................................................................................... 14

*Ayuda, Inc. v. FTC*,
    70 F. Supp. 3d 247 (D.D.C. 2014) ....................................................................................... 12

*Benjamin v. Dep't of State*,
    178 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................................... 2

*Bigwood v. Dep't of Def.*,
    132 F. Supp. 3d 124 (D.D.C. 2015) ....................................................................................... 3

*Calderon v. Dep't of Agric.*,
    236 F. Supp. 3d 96 (D.D.C. 2017) ....................................................................................... 13

*Canning v. Dep't of Just.*,
    567 F. Supp. 2d 104 (D.D.C. 2008) ..................................................................................... 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................................... 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*,
    478 F. Supp. 2d 77 (D.D.C. 2007) ......................................................................................... 7

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................................................... 9

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976) ............................................................................................................. 12

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ................................................................................................................... 8

*Dep't of Just. v. Tax Analysts*,
    492 U.S. 136 (1989) ............................................................................................................... 6

*Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) ............................................................................................................. 11

*Elec. Frontier Found. v. Dep't of Just.*,
    739 F.3d 1 (D.C. Cir. 2014) ................................................................................................... 9

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
    384 F. Supp. 2d 100 (D.D.C. 2005) ..................................................................................... 13

*Emuwa v. Dep't of Homeland Sec.*,
   113 F.4th 1009 (D.C. Cir. 2024) ...................................................................... 14

*EPA v. Mink*,
   410 U.S. 73 (1973) ............................................................................................ 8

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ......................................................................... 7, 8, 9, 10

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) ...................................................................................... 6

*Gov't Accountability Project v. Dep't of State*,
   699 F. Supp. 2d 97 (D.D.C. 2010) ............................................................. 11-12

*Jud. Watch, Inc. v. Dep't of State*,
   306 F. Supp. 3d 97 (D.D.C. 2018) ..................................................................... 7

*Jud. Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ............................................................. 2, 12-13, 13

*Jud. Watch, Inc. v. Rossotti*,
   285 F. Supp. 2d 17 (D.D.C. 2003) ..................................................................... 3

*Leopold v. Dep't of Just.*,
   94 F.4th 33 (D.C. Cir. 2024) ........................................................................... 14

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) ........................................................................... 11

*Long v. ICE*,
   279 F. Supp. 3d 226 (D.D.C. 2017) ............................................................ 12, 13

*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ........................................................................... 8

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ..................................................................... 6, 14

*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................... 3

*McCutchen v. Dep't of Health & Human Servs.*,
   30 F.3d 183 (D.C. Cir. 1994) ............................................................................. 6

*Milton v. Dep't of Just.*,
   783 F. Supp. 2d 55 (D.D.C. 2011) ................................................................... 12

*Nat'l Treasury Emps. Union v. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986) ........................................................................... 6

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ....................................................................................... 8, 9

*Oglesby v. Dep't of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ................................................................................................ 3, 5

*Petroleum Info. Corp. v. Dep't of Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) ................................................................................................. 9

*Reps. Comm. for Freedom of Press v. FBI,*
    3 F.4th 350 (2021) .......................................................................................................... 10, 11

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) ....................................................................................... 2, 3, 9

*Schoenman v. FBI,*
    575 F. Supp. 2d 136 (D.D.C. 2008) ......................................................................................... 13

*Span v. Dep't of Just.,*
    696 F. Supp. 2d 113 (D.D.C. 2010) ........................................................................................... 2

*Spirko v. Postal Serv.,*
    147 F.3d 992 (D.C. Cir. 1998) .................................................................................................. 7

*Steinberg v. Dep't of Just.,*
    23 F.3d 548 (D.C. Cir. 1994) .................................................................................................... 4

*Sussman v. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ............................................................................................... 14

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) .................................................................................................. 6

*Vaughn v. Rosen,*
    523 F.2d 1136 (D.C. Cir. 1975) ............................................................................................... 10

*Weisberg v. Dep't of Just.,*
    705 F.2d 1344 (D.C. Cir. 1983) ....................................................................................... 2, 3, 4, 5

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) .................................................................................................. 6

**Statutes**

5 U.S.C. § 552 ...................................................................................... 1, 6, 7, 10, 11, 12, 14
5 U.S.C. § 552a ............................................................................................................. 1, 15

Defendant, the Secretary of the Department of Veterans Affairs ("VA" or "Agency"), through counsel, respectfully moves for summary judgment in this matter arising under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a.[1]  As detailed in the Declarations of Brian Tierney, Danielle Hinton, and Natalie Souza, and *Vaughn* Index, filed herewith, the VA located records responsive to *pro se* Plaintiff, Leroy Alford's FOIA and Privacy Act requests and, after careful review of the responsive records located during that search, released those records to Plaintiff, with information withheld subject to FOIA Exemptions 5 and 6.  Hinton Decl. ¶¶ 10-14; Souza Decl. ¶¶ 11-12.  Thus, as demonstrated below, in the accompanying Statement of Material Facts Not in Genuine Dispute ("SMF" or "Statement"), in the Hilton, Tierney, and Souza Declarations, related exhibits, and *Vaughn* Index, there is no genuine issue of material fact as to Defendant's search or the withholdings, and Defendant is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

The factual background is fully set forth in Defendant's Statement of Material Facts Not in Genuine Dispute, and in the Hilton, Tierney, and Souza Declarations, related exhibits, and *Vaughn* Index, which are incorporated herein by reference.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact

---

[1]  Defendant respectfully submits herewith the Declaration of Brian Tierney ("Tierney Decl."), the Declaration of Danielle Hinton ("Hinton Decl."), and accompanying exhibits, and the Declaration of Natalie Souza ("Souza Decl.").  Defendant refers to the exhibits to the Hinton Declaration as "Hinton Ex. __" and refers to the exhibits to the Souza Declaration as "Souza Ex. __."  Defendant also respectfully submits, herewith, a *Vaughn* index in support of the VA's Exemption 5 withholdings.

is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)).  At summary judgment, the "agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency withholding records under a FOIA exemption "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

The withholding agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And this evidence is entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

I.    **DEFENDANT CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE RECORDS**

A.    **Legal Standard**

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) ("[T]he agency's search for records need not be exhaustive, but merely reasonable. The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured."). A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records). Accordingly, for a court evaluating an agency's search, the fundamental question is "whether the search for those documents was adequate," not "whether there might exist

- 3 -

any other documents responsive to the request." *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Weisberg*, 705 F.2d at 1351 ("[T]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.") (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)).

## B.    Defendant's Search

Here, Defendant conducted a reasonable search.  Based on the context of the requests themselves and with knowledge of the records maintained by the Veterans Benefits Administration, the VA determined that the offices within VBA most likely to maintain responsive electronic records are: the Baltimore Regional Benefits Office (Baltimore RO), the National Capital Regional Benefits Office (NCRBO) and the VBA Veterans Readiness and Employment Service Program Office (VR&E Service).  Hinton Decl. ¶ 8.  Eighteen custodians were confirmed to have worked on either completing Plaintiff's advisory opinion regarding his request for equitable relief, as identified by Plaintiff in his January 31, 2022, request, or on his administrative review documentation concerning the discontinuance of self-employment services, as identified by Plaintiff in his May 16, 2022, request.  Hinton Decl. ¶¶ 8, 9.  Thus, the VA determined that these eighteen custodians are the individuals within those offices who would most likely maintain responsive records.  Hinton Decl. ¶¶ 8, 9.

VA Office of Information & Technology (OI&T) conducted direct automated searches of the eighteen employee custodians' mailboxes (including but not limited to outbox, inbox, calendar entries and teams messages) located on the Microsoft Exchange server, using five keywords reasonably calculated to return responsive records pertaining to the Plaintiff: "'Leroy' within two words of 'Alford,'" or "Alford" or lerfamily@aol.com, or "'L' within two words of 'Alford'" or "Alford 1659."  Hinton Decl. ¶ 10.  The keyword "Alford 1659," was included because the last

name of the claimant plus the last four numbers of the claimant's file number is a common way that specific claimants are referenced in internal VBA communications. Hinton Decl. ¶ 10. In order to segregate records responsive to the two separate FOIA requests at issue in this case, the VA conducted additional keyword searches within the pool of responsive records returned by the initial Office of Information & Technology search using terms derived from the language Plaintiff used within his January 31, 2022, and May 16, 2022 requests. Hinton Decl. ¶ 11.

Manual record searches were also conducted in accordance with the description of the records sought in Plaintiff's January 31, 2022, and May 16, 2022, requests. Hinton Decl. ¶ 12. Seven employees of the Veterans Benefits Administration's Veterans Readiness and Employment Service Program Office who were identified as working on or requesting an administrative review in Plaintiff's case, conducted manual searches of their Microsoft exchange messages (including teams and email messages) and employee hard and electronic drives to locate documents responsive to parts b and c of Plaintiff's May 16, 2022, request. Hinton Decl. ¶ 12. No date restriction was applied in the manual search, and employees used the Plaintiff's personal identifiers along with the term "administrative review" as key terms in conducting their search. Hinton Decl. ¶ 12. Productions were then made to Plaintiff. Hinton Decl. ¶ 14.

Defendant also identified and produced a complete copy of Plaintiff's claims file in response to Plaintiff's May 10, 2021, request (Tierney Decl. ¶¶ 5-8), and identified and produced all VA forms 28-1902(b) as specifically requested in Plaintiff's August 31, 2022, FOIA request (Souza Decl. ¶ 12).

As described by its declarant, the Agency used methods that could be reasonably expected to produce the information requested by Plaintiff and, therefore, satisfied its obligation to conduct a reasonable search. *Oglesby*, 920 F.2d at 68; *Weisberg*, 705 F.2d at 1351.

## II.    DEFENDANT PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTIONS 5 and 6

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  FOIA requires that an agency release records responsive to a properly submitted request if the records are not protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  A court must give FOIA's exemptions "a fair reading," as these exemptions serve "important interests" and "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up). If information falls within one or more FOIA exemptions, an agency can withhold that information if (1) the agency "reasonably foresees that disclosure would harm an interest protected by an exemption," or (2) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).   "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union ("NTEU") v. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). Such an index or other evidence offered by an agency, such as a declaration, must collectively contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9.

Thus, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by

the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

As shown in the Tierney and Souza Declarations, their exhibits, and the *Vaughn* index, the Agency properly and judiciously applied Exemptions 5 and 6 to withhold information that is predecisional and deliberative or that reveals personally identifiable information of government employees. Defendant describes each of these exemptions and the bases for their application below.

### A.    Exemption 5 Withholdings

FOIA Exemption 5, allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and inter-agency communications are between employees of different agencies or departments. *Jud. Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary). One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure"); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl'") (referencing S. Rep. No. 813, at 9 (1965)).

To properly assert the deliberative process privilege under Exemption 5, the Agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Here, the Agency has shown both.

First, the material over which Defendant asserted Exemption 5 in conjunction with the deliberative process privilege relates to intra-agency communications. As explained in the Hinton Declaration and the *Vaughn* index, the affected records were either emails among VA employees or draft documents such as an advisory opinion for Plaintiff or responses to inquiries by Plaintiff. Hinton Decl. ¶ 24; *Vaughn* Index.

Second, the material over which Defendant asserted Exemption 5 in conjunction with the deliberative process privilege is pre-decisional.  Material is "predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process. *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

Here, as explained in the Hinton Declaration and the *Vaughn* index, the affected records were either emails among VA employees regarding Plaintiff's queries or draft documents such as an advisory opinion for Plaintiff or responses to inquiries by Plaintiff.  Hinton Decl. ¶ 24; *Vaughn* Index.  During the process of making determinations regarding Plaintiff's benefits, employees had discussions via electronic mail deliberating alternative means of addressing these matters and created drafts that were not ultimately incorporated into the final decision documents that were provided to the Plaintiff.  Hinton Decl. ¶ 25; *Vaughn* Index.  Such records are clearly predecisional.

Third, the material over which Defendant asserted Exemption 5 in conjunction with the deliberative process privilege is deliberative.  Deliberative material is "prepared to help the agency formulate its position," *Sierra Club*, 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id*. (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (documents that are part of the deliberative process make recommendations or express opinions on legal or policy matters).  Here, during the process of making determinations regarding Plaintiff's benefits, employees had discussions via electronic mail deliberating alternative means of addressing these matters and created drafts that were not ultimately incorporated into the final decision documents that were provided to the Plaintiff. Hinton Decl. ¶ 25; *Vaughn* Index.  Such information clearly falls within the definition of "deliberative" for the purposes of FOIA Exemption 5.

Finally, Defendant has demonstrated that there is foreseeable harm in disclosing the information withheld pursuant to Exemption 5.  In addition to showing that specific documents qualify for protection under a named Exemption, the FOIA Improvement Act of 2016 further requires that an agency show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete

demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

Here, the VA states that the release of the withheld drafts and deliberations would have foreseeable harm to the deliberative process because non-final determinations, not based on an incomplete review of the evidence and law would lead to confusion regarding why other potential alternative determinations were not adopted or were ultimately changed in the final decision. Hinton Decl. ¶ 25; *Vaughn* Index.  Release of deliberative drafts would have a chilling effect on the internal decision-making process, discouraging employees from contributing candidly to the drafting and decision-making process, for fear that all deliberative discussions or drafts could be made public.  Hinton Decl. ¶ 25; *Vaughn* Index.

The Agency has met its burden of demonstrating that it properly withheld information pursuant to Exemption 5.

### B.      Exemption 6 Withholdings

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. Dep't of State*,

- 11 -

699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) (finding that because email addresses can be identified as applying to particular individuals, they qualify as "similar files" under Exemption 6).

"The Supreme Court has interpreted the term 'similar files' broadly so as 'to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). Indeed, "[t]he information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

Courts generally follow a two-step process when considering withholdings or redactions pursuant to Exemption 6. First, the Court determines whether the records are the type of personnel, medical, or similar files that the exemption covers. *Long v. ICE*, 279 F. Supp. 3d 226, 243 (D.D.C. 2017) (citing *Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)). Second, if the records are of the type covered by the exemption, the Court proceeds to determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 382 (1976).

Here's the VA redacted the names of non-SES staff, email addresses, telephone numbers and other personally identifiable information of low-level employees in the records released to Plaintiff. Hinton Decl. ¶ 14. The names and contact information of federal employees are the type of information that is eligible for withholding under Exemption 6. Although Exemption 6 "does not categorically exempt individuals' identities" from disclosure, it has been construed broadly enough to allow an agency "to exempt not just files, but also bits of personal information, such as names and addresses," provided the disclosure "would create a palpable threat to privacy." *Judicial*

- 12 -

*Watch, Inc. v. FDA*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (alteration adopted) (internal quotation marks omitted); *accord Calderon v. Dep't of Agric.*, 236 F. Supp. 3d 96 (D.D.C. 2017) (explaining that the threshold for applying Exemption 6 is met if the information "applies to a particular individual" (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982))). The fact that an individual is a federal employee does not change that analysis. *See, e.g., Schoenman v. FBI*, 575 F. Supp. 2d 136, 160 (D.D.C. 2008); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005). Consequently, federal employees' personal identifying information is of the type that Exemption 6 potentially allows to be withheld. *Long*, 279 F. Supp. 3d at 244.

Second, the individuals whose information was withheld have significant privacy interests in their personal identifying information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. *Cf. Jud. Watch*, 449 F.3d at 153 (explaining that individuals have a privacy interest in the nondisclosure of their names and addresses to avoid physical danger); Hinton Decl. ¶¶ 18, 19. The VA is aware of VA employees being subjected to harassment by Veteran claimants in the past for being associated with decisions as these are claims for benefits that deeply affect Veterans. Hinton Decl. ¶ 19. There is also no public interest served by disclosing the names of non-SES employees because knowledge of their identities would not itself significantly increase the public's understanding of Veterans Health Administration's operations and activities when the substance of the underlying communication is disclosed. Hinton Decl. ¶ 21.

In the face of a legitimate privacy interest in nondisclosure and the absence of any countervailing public interest in disclosure, the Defendant has demonstrated that it properly withheld the federal employees' names and contact information. *See Schoenman*, 575 F. Supp. 2d

at 161 (holding, in the context of Exemption 6, that where the defendant had identified a slightly-greater-than-de minimis privacy interest and the court found no public interest existed "something, even a modest privacy interest[,] outweighs nothing every time" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

### III. DEFENDANT PROPERLY CONCLUDED THAT NO FURTHER SEGREGATOIN OF THE RESPONSIVE RECORDS IS POSSIBLE

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data,* 566 F.2d at 260. To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). An agency, also "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm to the interests protected by a particular FOIA exemption. *Leopold v. Dep't of Just.*, 94 F.4th 33, 37-38 (D.C. Cir. 2024). Nonetheless, an attestation "that 'no further segregation' [i]s possible without disclosing such [exempt] information" suffices to establish an agency's fulfillment of its duty to segregate non-exempt material and to establish foreseeable harm. *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1017 (D.C. Cir. 2024) (citing 5 U.S.C. § 552(a)(8)(A)(ii)).

- 14 -

Here, Defendant's declarant explains that, despite the withholding of information pursuant to FOIA exemptions 5 and 6, "all segregable information was provided."    Hinton Decl. ¶ 14. Thus, Defendant has met its burden of establishing that all reasonably segregable, non-exempt information has been disclosed.

## IV.  DEFENDANT HAS FUFILLED HIS OBLIGATIONS UNDER THE PRIVACY ACT FOR PLAINTIFF'S MAY 10, 2021 REQUEST

Defendant is entitled to judgement as a matter of law as to Plaintiff's Privacy Act claim in connection with his May 10, 2021, request to review "in person" his "vocational rehabilitation employment and readiness files, VBMS files, and CWINERS hard copy and or electronic records." Tierney Decl. ¶ 5.  Under the Privacy Act, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, [an agency shall] permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1).  An "individual may bring a civil action against the agency . . . [w]henever any agency . . . refuses to comply with an individual request under subsection (d)(1)." 5 U.S.C. § 552a (g)(1)(B).  Nothing in the Privacy Act requires an agency to permit a requester to enter a government facility to review documents. *See generally*, 5 U.S.C. § 552a.

Here, Defendant complied with the Privacy Act by producing the requested records to Plaintiff on a compact disk.  Specifically, on or about April 11, 2023, staff of the Information and Administrative Law Group of the Office of the General Counsel for the U.S. Department of Veterans Affairs in Washington, D.C. requested that the St. Louis Regional Office provide a complete copy of Plaintiff's claims file to him via compact disk. Tierney Decl. ¶ 6.  Staff at the St. Louis Regional Office mailed Plaintiff a copy of his complete claims file (with the exception of the redaction of names of third parties) via compact disk on or about April 21, 2023.  Tierney Decl.

- 15 -

¶ 7.  The April 21, 2023 production was in response to Plaintiff's May 10, 2021, request for in-person review of his claims file.  Tierney Decl. ¶ 8; Souza Decl. ¶ 11.  Plaintiff was entitled to nothing more than access to the records requested, which he received.  Defendant is entitled to judgment as a matter of law with respect to the Privacy Act claim associated with Plaintiff's May 10, 2021 request for records.

## CONCLUSIONS

For the foregoing reasons, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's FOIA and Privacy Act claims.

Dated: May 23, 2025
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____/s/  *Sian Jones*_____
SIAN JONES, D.C. Bar # 1024062
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2578

*Attorneys for the United States of America*

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I will cause a copy of the foregoing motion to be

served by United States mail, postage prepaid, upon:

LEROY ALFORD
6404 CARRICK PLACE
TEMPLE HILLS, MD 20748

/s/ *Sian Jones*_____
SIAN JONES
Assistant United States Attorney