## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEROY ALFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 22-2856 (RBW) |
| | ) |
| DOUGLAS A. COLLINS,[1] Secretary of | ) |
| the Department of Veterans Affairs, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Leroy Alford, a "disabled, . . . [twenty-three]-year retired veteran of the

Gulf War[,]" Complaint ("Compl.") ¶ 2, ECF No. 1, who is proceeding <u>pro se</u>, brings this civil

action against the defendant, Douglas A. Collins, in his official capacity as the Secretary of the

Department of Veterans Affairs (the "VA"), asserting claims under the Freedom of Information

Act (the "FOIA") and the Privacy Act, <u>see id.</u> at 5–6.  Currently pending before the Court is the

Defendant's Motion for Summary Judgment and Memorandum of Points and Authorities in

Support Thereof ("Def.'s Mot."), ECF No. 88.  As of the date of this Memorandum Opinion and

Order, the plaintiff has failed to respond to the defendant's motion, despite the Court's prior

admonitions of the consequences of failing to do so.  <u>See generally</u> Order (July 1, 2025), ECF

No. 89; Minute ("Min.") Order (July 9, 2025) (ordering the plaintiff to file his response on or

before August 1, 2025).  Thus, upon careful consideration of the defendant's motion, the parties'

---

[1] Douglas A. Collins has been substituted for Todd Hunter as the current proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

submissions,[2] and the entire record in this case, the Court concludes for the following reasons that it must grant in part and deny without prejudice in part the defendant's motion for summary judgment.

## I.    BACKGROUND

### A.    Factual and Administrative Background

This case concerns several FOIA/Privacy Act requests submitted by the plaintiff to the defendant and component offices of the VA.  First, "[o]n May 10, 2021, [the p]laintiff made a Privacy Act request [('the May 10 Request')], to the Department of Veterans Affairs, Veterans Benefits Administration, National Capital Region Benefits Office (NCRBO) in Washington, D.C.[,]" that he "be permitted an in[-]person review of [his] vocational rehabilitation employment and readiness files, [Veterans Benefits Management System ('VBMS')] files, and [C-WINRS[3]] hard copy and[/]or electronic records."  Def.'s Facts ¶ 1.[4]

Second, on January 31, 2022, the plaintiff submitted a FOIA/Privacy Act request (the "January 31 Request"), seeking "a copy of an advisory opinion completed by member(s) of [the VA's] staff[,]" relating to his March 13, 2018, request for equitable relief from the VA.  Id. ¶ 6. In this FOIA/Privacy Act request, the plaintiff requested: (1) identification of "the VA employee

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"), ECF No. 88-1; (2) the Declaration of Brian Tierney ("Tierney Decl."), ECF No. 88-2; (3) the Declaration of Danielle Hinton ("Hinton Decl."), ECF No. 88-3; (4) the Declaration of Natalie Souza ("Souza Decl."), ECF No. 88-8; and (5) the defendant's Vaughn Index, ECF No. 88-12.

[3] "C[-]WINRS stands for 'Corporate WINRS' and is the system that VA case managers use to update the status for each assigned case."  Green v. Collins, No. 23-6900, 2025 WL 957436, at *4 n.12 (Vet. App. Mar. 31, 2025) (citing M28C, pt. III, § A, ch. 1.01.c (Aug. 14, 2024), available at http://www.knowva.ebenefits.va.gov).

[4] The Court has previously admonished the plaintiff that under Federal Rule of Civil Procedure 56(e), if a party "fails to address another party's assertion of fact as required by Rule 56(c), the Court may . . . consider the fact undisputed for purposes of the motion" for summary judgment.  See Order at 1 (July 1, 2025) (quoting Fed. R. Civ. P. 56(e)).  Thus, the plaintiff having failed to respond to the defendant's motion for summary judgment and the statement of undisputed material facts contained therein, the Court treats the defendant's statement of facts as undisputed for the purposes of resolving the pending motion for summary judgment.

who completed the advisory opinion[;]" (2) "a copy of [the] advisory opinion[;]" (3) "cop[ies] of any supporting materials[,] i.e., background papers, emails, legal opinions, white papers, or position papers that discussed or mention 'Leroy Alford' and his equitable relief request[;]" (4) "cop[ies] of any emails produced concerning the advisory opinion concerning [the plaintiff's] equitable relief request[;]" (5) "cop[ies] of all emails between employees at the Baltimore Regional Office, National Capital Region Office, the [Veterans Benefits Administration Veterans Readiness and Employment Service Program ('VR&E')] Central Office, or any other VA office or employee discussing or mentioning the equitable relief concerning 'Leroy Alford[;]'" and (6) a copy of "Claimant Employment and Readiness [ ] folder for 'Leroy Alford' (electronic or hard copy) established or used or reviewed by the VA employee(s) who completed work on . . . the advisory opinion."[5] Id.

Third, on May 16, 2022, the plaintiff submitted another FOIA/Privacy Act request (the "May 16 Request"), seeking "a copy of any administrative review documentation received by you or your staff for conducting an administrative review for 'Leroy Alford['] . . . from the National Capital Region Benefits Office (NCRBO) officials, on or about 13 May 2022." Id. ¶ 7. In this third request, the plaintiff sought: (1) a copy of that documentation; (2) "a copy of any transmittal correspondence, memorandum, or emails received by your office, you or any VR[&]E Central Office employee requesting that an administrative review be conducted for Leroy Alford[;]" and (3) "cop[ies] of all emails between employees at the Baltimore Regional Office, National Capital Region Office, the V[&]RE Central Office, or any other VA office or employees discussing or mentioning completing, conducting or requesting an administrative

---

[5] The defendant represents that this folder "is comprised of [the plaintiff's] entire VBMS folder and his C-WINRS files which have been provided to [the plaintiff]." Id. ¶ 44.

review for 'Leroy Alford.'" Id.  And, finally, "[o]n August 31, 2022, [the p]laintiff submitted a Privacy Act request [(the 'August 31 Request')] for all of his VA 28-1902(b) forms." Id. ¶ 8.

The defendant began processing these various requests in 2023.  In response to the plaintiff's May 10 Request, "[o]n or about April 11, 2023," staff in the VA's Office of General Counsel "requested that the St. Louis Regional Office provide a complete copy of [the p]laintiff's claims file to him via compact disk and that they treat the request as an expedited request because the request was being made pursuant to ongoing litigation." Id. ¶ 2.  And, the St. Louis Regional Office "mailed [the p]laintiff a copy of his complete claims file (with the exception of the redaction of names of third parties) via compact disk on or about April 21, 2023." Id. ¶ 4.  This production consisted of the entire content of 13,369 pages.  See id. ¶ 20.

On March 28, 2023, the defendant issued to the plaintiff its initial agency decision letter in response to the plaintiff's January 31 Request, releasing to the plaintiff 277 pages of records. See id. ¶ 17.  However, "[o]n April 25, 2023, [the d]efendant[] sent a superseding initial agency decision letter[ to the plaintiff], [as a] correction to the March 28, 2023, initial agency decision letter." Id. ¶ 21.  The superseding letter corrected several clerical errors in the prior letter, "including the request date and the FOIA processing number[,]" id., and included 277 pages of responsive records, see id. ¶ 22.  Also on April 25, 2023, the defendant produced 152 pages of responsive records to the plaintiff in response to his May 16 Request.  See id. ¶ 25.

And, on August 10, 2023, the defendant provided to the plaintiff 1,154 pages responsive to his January 31 Request.  See id. ¶ 29.  However, after mailing these pages to the plaintiff, the defendant noted that some documents contained clerical errors due to the fact that some of the redaction codes were mislabeled.  See id. ¶ 33.  Thus, the defendant "issued a corrected initial

agency decision letter on May 19, 2025[, to the plaintiff]" <u>id.</u>, along with reissuing to him the corrected 1,154 pages of responsive records, <u>see</u> <u>id.</u> ¶ 34.

Separately, on July 28, 2023, the "[d]efendant provided [to the p]laintiff [ ] a copy of his entire C-WINRS file via mail[.]" <u>Id.</u> ¶ 28. And, "[o]n April 29, 2024, [the d]efendant provided [to the plaintiff] all records added to his C-WINRS file from July 28, 2023 through April 29, 2024." <u>Id.</u> ¶ 42. Additionally, the defendant "provided [the p]laintiff with all information added to his VBMS file since April 21, 2023, through April 29, 2024[,]" <u>id.</u>, along with "all VA forms 28-1902(b) as specifically requested in [the p]laintiff's August 31, 2022, FOIA request[,]" <u>id.</u>

Regarding the records that were produced to the plaintiff, the defendant withheld from those records "[t]he names of non-Senior Executive staff, email addresses, telephone numbers and other personally identifiable information of low-level employees" pursuant to FOIA Exemption 6. <u>See</u> <u>id.</u> ¶¶ 18, 23, 26, 30, 43. Additionally, in regards to the August 10, 2023, release, the defendant withheld "[d]eliberative or pre-decisional drafts of [the p]laintiff's administrative benefits decisions and deliberative discussions regarding the unfinalized contents of those decisions" pursuant to FOIA Exemption 5. <u>Id.</u> ¶ 31.

## B.    Procedural Background

The Court will not outline the entire procedural history of this long-running FOIA matter. The Court will, however, detail the procedural history to the extent it is relevant to the pending motion in this case.

The plaintiff filed his original Complaint in this case on September 20, 2022. <u>See</u> Complaint at 1, ECF No. 1. Subsequently, on February 27, 2024, the Court granted in part and denied in part the plaintiff's motion for leave to file an amended complaint. <u>See</u> Order at 1 (Feb. 27, 2024), ECF No. 30. Specifically, the Court granted the plaintiff's motion "to the extent

the plaintiff [sought] to supplement his original Complaint to add a claim regarding the defendant's alleged 'fail[ure] to respond to submission of VA Form 20-10206, Freedom of Information Act and Privacy Act (FOIA/PA) request[,] submitted on [August 31, 2022,] in person to the National Capital Region Benefits Office (NCRB) public contact office.'" Id. (quoting Plaintiff's Motion for Leave of Court to File First Amended Complaint, Exhibit ("Ex.") 1 (Plaintiff's First Amended Complaint) at 1, ECF No. 20-1).

Then, on September 30, 2024, after several teleconferences conducted by the Court and further briefing by the parties, the Court denied the plaintiff's motion to supplement his Complaint with a new Privacy Act claim. See Order at 1 (Sept. 30, 2024), ECF No. 69; Memorandum Opinion (Sept. 30, 2024), ECF No. 70. And, on February 4, 2025, the Court denied the plaintiff's two subsequent motions to supplement his Complaint with unrelated FOIA and Privacy Act claims and ordered the parties to submit a proposed schedule for summary judgment briefing. See Order at 7–8 (Feb. 4, 2025), ECF No. 82.

Pursuant to the parties' proposed briefing schedule, see Min. Order (Apr. 21, 2025), the defendant filed his motion for summary judgment on May 23, 2025, see Def.'s Mot. at 1. The plaintiff's opposition to the defendant's motion was due on or before June 23, 2025, see Min. Order (Apr. 21, 2025), but on July 1, 2025, having received no response from the plaintiff, the Court ordered the plaintiff to "show cause in writing why the Court should not consider the facts contained within the Defendant's Statement of Material Facts Not in Genuine Dispute[ . . .] as undisputed for purposes of determining whether to grant the defendant's motion for summary judgment" pursuant to Federal Rule of Civil Procedure 56(e). Order at 2 (July 1, 2025), ECF No. 89.

On July 8, 2025, in response to the Court's July 1, 2025 order, the plaintiff requested that the Court grant him an extension of time to file his opposition to the defendant's motion until August 25, 2025, because (1) although the defendant represented that it had served the plaintiff with his motion on May 23, 2025, the plaintiff was not in fact served until June 2, 2025; and (2) because the plaintiff's post-traumatic stress disorder disability rating from the VA had been increased "after [the p]laintiff suffered a second stroke during the pendency of this lawsuit." Plaintiff's Respon[se] to the Court's 1 July 2025 Order to Show Cause at 2–3, ECF No. 90. On July 9, 2025, the Court granted in part and denied in part the plaintiff's request for the extension and ordered him to file his opposition on or before August 1, 2025. See Min. Order (July 9, 2025). As of the date of this Memorandum Opinion and Order, the plaintiff has not filed any response to the defendant's motion, nor has he filed an additional request for an extension of time with the Court.

## II.    STANDARD OF REVIEW

Courts may not treat as conceded motions for summary judgment where the non-moving party fails to respond to the motion. See Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507–08 (D.C. Cir. 2016). Instead, the "Court may enter summary judgment only if, after fully considering the merits of the motion, it finds that it is warranted." Id.

Thus, even where the non-moving party fails to respond to a motion for summary judgment, a court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d

689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

summary judgment[.]"  Id.  The movant has the burden of demonstrating the absence of a

genuine issue of material fact and that the non-moving party "fail[ed] to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S.

Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted).  The "FOIA requires

federal agencies to disclose, upon request, broad classes of agency records unless the records are

covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d

828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S.

Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be

interpreted with a presumption favoring disclosure and exemptions are to be construed

narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the

withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381,

385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de

novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the

Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to

sustain its action' and directs the district courts to 'determine the matter de novo.'").  Moreover,

the defendant's burden "cannot be met by mere conclusory statements."  Wash. Post Co., 863

F.2d at 101 (citation omitted).  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" <u>King v. U.S. Dep't of Just.</u>, 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against," <u>Wash. Post Co.</u>, 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." <u>Friends of Blackwater v. U.S. Dep't of Interior</u>, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting <u>Greenberg v. U.S. Dep't of Treasury</u>, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" <u>Students Against Genocide</u>, 257 F.3d at 833 (omission in original) (quoting <u>Goland v. Cent. Intel. Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978)).  On the other hand, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" <u>Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.</u>, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting <u>Nat'l Ass'n of Gov't Emps. v. Campbell</u>, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

### III.    ANALYSIS

As noted already, the defendant moves for summary judgment on both the plaintiff's FOIA and Privacy Act claims.  <u>See</u> Def.'s Mot. at 1.  The defendant argues that he is entitled to

summary judgment on the plaintiff's FOIA claims because the agency (1) conducted an adequate search in response to these requests; (2) appropriately withheld certain information pursuant to FOIA Exemptions 5 and 6; and (3) released all segregable records and information, as required by the FOIA.  Id.  The defendant further argues that he is entitled to summary judgment on the plaintiff's Privacy Act claim because the agency provided the plaintiff with the requested records, and therefore, has complied with all its statutory obligations.  Id. at 15.  The Court will first address the plaintiff's FOIA claims, before addressing the plaintiff's Privacy Act claim.

**A.    The Plaintiff's 2022 FOIA/Privacy Act Requests**

**1.  Whether the Defendant's Search in Response to the Plaintiff's FOIA Requests Was Adequate**

The adequacy of an agency's search is measured by a standard of reasonableness under the circumstances of the particular case at issue.  Truitt v. Dep't of State, 897 F. 2d 540, 542 (D.C. Cir. 1990).  To satisfy its burden, an agency must show that "it has conducted a search reasonably calculated to uncover all relevant documents."  Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting Weisberg v. U.S. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  "Agencies can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'"  Id. (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).  And, in their consideration of those affidavits, courts apply "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  Id. (quoting Safecard Servs., Inc., v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted)).

Once the agency has provided a "relatively detailed" declaration, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. Morley v. Cent. Intel. Agency, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal citation and quotation marks omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with [the] FOIA." North v. Dep't of Just., 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).

In support of its position that the search was adequate, the defendant has provided a declaration from Danielle C. Hinton, the current Acting Deputy Chief Counsel of the FOIA/Privacy Act litigation team in the VA's Office of General Counsel, who represents that the VA determined that "the offices within VBA most likely to maintain responsive electronic records [were]: the Baltimore Regional Benefits Office (Baltimore RO), the National Capital Regional Benefits Office (NCRBO), and the VBA Veterans Readiness and Employment Service Program Office (VR&E Service)." Def.'s Mot. at 4 (citing Hinton Decl. ¶ 8). The VA then identified eighteen custodians who "worked on either completing [the p]laintiff's advisory opinion regarding his request for equitable relief, as identified by [the p]laintiff in his January 31, 2022, request, or on his administrative review documentation concerning the discontinuance of self-employment services, as identified by [the p]laintiff in his May 16, 2022, request." Id. (citing Hinton Decl. ¶¶ 8–9). Upon identifying these custodians, the VA "conducted direct automated searches" of these custodians' mailboxes, including emails, calendar entries, and Microsoft Teams messages, using search terms "reasonably calculated to return responsive records pertaining to the [p]laintiff[.]" Id. (citing Hinton Decl. ¶ 10). The VA then conducted additional keyword searches to segregate records responsive to each FOIA request. See id. at 5

(citing Hinton Decl. ¶ 11).  The VA further identified the seven custodians who had worked on the administrative review of the plaintiff's case and directed that manual record searches of those custodians' Microsoft Exchange messages and employee hard and electronic drives be conducted, in order to locate documents responsive to the plaintiff's requests.  See id. at 5 (citing Hinton Decl. ¶ 12).  Regarding the plaintiff's other requests, the VA submitted additional declarations from Brian Tierney, Deputy Chief Counsel of the FOIA/Privacy Appeals and Litigation Division in the VA's Office of General Counsel, and Natalie Souza, the Veterans Service Center Manager of the Baltimore Regional Office in the Veterans Benefits Administration, stating that the VA "identified and produced a complete copy of [the p]laintiff's claims file in response to [his] May 10, 2021, request[,]" id. (Tierney Decl. ¶¶ 5–8), as well as "all VA forms 28-1902(b) as specifically requested in [his] August 31, 2022, FOIA request[,]" id. (citing Souza Decl. ¶ 12).

These declarations are "relatively detailed" in their description of the agency's search for records responsive to the plaintiff's requests, Morley, 508 F.3d at 1116 (citation omitted), and therefore, in the absence of any "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the searches it conducted, id. (citation omitted)— indeed, in the absence of any response from the plaintiff—the Court concludes that "such affidavits or declarations are sufficient to demonstrate [the] agency's compliance with [the] FOIA[,]" North, 774 F. Supp. 2d at 222 (citing Perry, 684 F.2d at 127).  Therefore, the Court concludes that the defendant has met his burden in showing that the VA conducted an adequate search in response to the plaintiff's requests.

**2. Whether the Defendant Properly Withheld Information Pursuant to FOIA Exemptions 5 and 6**

The Court must now determine whether the defendant properly withheld information in responsive documents pursuant to FOIA Exemptions 5 and 6. The defendant asserts that the VA "properly and judiciously applied [FOIA] Exemptions 5 and 6 to withhold information that is pre-decisional and deliberative or that reveals personally identifiable information of government employees." Def.'s Mot. at 7. In this case, as is customary in FOIA cases, the defendant has provided a Vaughn index to support his claimed exemptions, which "describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." Prison Legal News v. Samuels, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015); see Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973) (requiring that "the agency specify in detail which portions of the document are disclosable and which are allegedly exempt[,]" which "could be achieved by formulating a system of itemizing and indexing that would correlate statements made in the [g]overnment's refusal justification with the actual portions of the document"); Pub. Emps. for Env't Resp. v. U.S. Env't. Prot. Agency, No. 18-cv-2219, 2021 WL 2515007, at *6 (D.D.C. June 18, 2021) ("An agency may prove the applicability of claimed exemptions through a Vaughn index or supporting affidavits or declarations, or both[.]"). Upon consideration of the defendant's submissions, including the Vaughn index and his supporting declarations, the Court concludes that the defendant has adequately justified some—but not all—of the VA's withholdings pursuant to FOIA Exemption 5, and that it has adequately justified its withholdings pursuant to FOIA Exemption 6. Thus, as discussed further below, the Court concludes that it must grant in part and deny without prejudice in part the defendant's motion for summary judgment as to these withholdins.

a.      **Exemption 5**

The VA withheld twenty records under FOIA Exemption 5.  See Vaughn Index at 1–8.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or

letters that would not be available by law to a party other than an agency in litigation with the

agency[.]"  5 U.S.C. § 552(b)(5).  "Exemption 5 incorporates the privileges that the

[g]overnment may claim when litigating against a private party, including the governmental

attorney-client and attorney work product privileges, the presidential communications privilege,

the state secrets privilege, and the deliberative process privilege."  Abtew v. U.S. Dep't of

Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015).

Here, the defendant invokes the deliberative process privilege, which "rests on the

obvious realization that officials will not communicate candidly among themselves if each

remark is a potential item of discovery and front page news[.]"  Dep't of Interior v. Klamath

Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001).  Thus, the "privilege shields documents

'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make

decisions."  Emuwa v. U.S. Dep't of Homeland Sec., 113 F.4th 1009, 1013 (D.C. Cir. 2024)

(quoting U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 267 (2021)).  "The

privilege ensures that 'debate and candid considerations of alternatives within an agency' are not

subject to public inspection."  Id. (quoting Machado Amadis, 971 F.3d at 371).

"The privilege may only be invoked for documents that are both predecisional and

deliberative."  Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th

350, 362 (D.C. Cir. 2021) (citing U.S. Fish & Wildlife Serv., 592 U.S. at 268).  To be

predecisional, a document must have been "generated before the agency's final decision on the

matter[.]"  Id. (quoting U.S. Fish & Wildlife Serv., 592 U.S. at 268).  And, "[a] document is

14

deliberative when it is 'prepared to help the agency formulate its position[,] . . . and it 'reflects the give-and-take of the consultative process[.]'" Id. (internal citations omitted).  "The agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"  Senate of the Com. of P.R. v. Dep't of Just., 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980)).  "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'"  Pub. Emps. for Env't Resp. v. Env't Prot. Agency, 213 F. Supp. 3d 1, 11 (D.D.C. 2016) (quoting Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force, 44 F. Supp. 2d 295, 299 (D.D.C. 1999)).  Accordingly, "to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide in its declaration . . . precisely tailored explanations for each withheld record at issue." Nat'l Sec. Couns. v. Cent. Intel. Agency, 960 F. Supp. 2d 101, 188 (D.D.C. 2013).  "[T]he agency must [also] describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.'"  Elec. Frontier Found. v. U.S. Dep't of Just., 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (Walton, J.) (quoting Arthur Andersen & Co. v. Internal Revenue Serv., 679 F.2d 254, 258 (D.C. Cir. 1982)).  "If the agency does not provide 'the minimal information necessary to make a determination concerning applicability of the deliberative process privilege[,]' then the court should deny the agency summary judgment."  Hunton & Williams LLP v. Env't Prot. Agency, 248 F. Supp. 3d 220, 241 (D.D.C. 2017) (quoting Elec. Frontier Found., 826 F. Supp. 2d at 173).

Even where the exemption applies, the FOIA Improvement Act of 2016 requires the agency to disclose that information unless it "reasonably foresees that disclosure would harm an interest protected by" the FOIA Exemption at issue, i.e., Exemption 5 in this case.  Reps. Comm. for Freedom of the Press, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).  In the context of Exemption 5, the agency must offer a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  Id. at 370.  This burden is "context specific[,]" id. (citations omitted), and the agency may not rely on "cookie-cutter formulations" of harm, see id. at 371.

Here, the defendant has withheld two categories of documents pursuant to Exemption 5: (1) draft documents and internal agency correspondence relating to the advisory opinion, the plaintiff's inquiries about his benefits requests, or his request for equitable relief, see Vaughn Index at 1–2, 5–7 (entries 0136–0139, 0145–0148, 0217–0220, 0552–0553, 0698–0701, 0713– 0716, 0725–0728, 0738–0741, 0786–0789, and 0996–0997); and (2) internal agency correspondence, including draft correspondence, regarding the status of one of the plaintiff's benefits requests or seeking guidance on the processing of the plaintiff's FOIA requests at issue in this litigation, see id. at 3–8 (entries 565, 569, 0574–0575, 0753–0754, 0757–0758, 0578– 0579, 0587, 0646–0647, 0753–0754, 0757–0758, 0987–0988); see also Def.'s Mot. at 9 (representing that "the affected records were either emails among VA employees regarding [the p]laintiff's queries or draft documents such as an advisory opinion for [the p]laintiff or responses to inquiries by [the p]laintiff").

The Court concludes that the defendant has adequately established that the first category of documents, i.e., Documents 0136–0139, 0145–0148, 0217–0220, 0552–0553, 0698–0701,

0713–0716, 0725–0728, 0738–0741, 0786–0789, and 0996–0997, are properly protected from disclosure to the plaintiff by the deliberative process privilege.  Specifically, the Hinton Declaration represents that "[d]uring the process of making these benefits determinations, employees had decisions . . . deliberating alternative means of addressing these matters and created drafts that were not ultimately incorporated into the final decision documents that were provided to the [p]laintiff."  Hinton Decl. ¶ 25.  These records, although undated, are reasonably described in the Vaughn Index as relating to the agency's draft advisory opinion and other non-final determinations, and thus are predecisional and deliberative.  See U.S. Fish & Wildlife Serv., 592 U.S. at 268.  As the Hinton Declaration makes clear, these drafts were prepared for—though not ultimately adopted by—the final agency determination and reflect the agency's internal deliberations regarding its forthcoming determination regarding the plaintiff's requests.  See Hinton Decl. ¶ 24.  Thus, the Court concludes that the defendant has adequately established that these records are protected by the deliberative process privilege.

The Court further concludes that the defendant has provided an adequate explanation of the foreseeable harm that would arise from the disclosure of these withheld records.  Although the Vaughn Index itself relies on formulaic assertions of foreseeable harm, the Hinton Declaration provides sufficient context-specific detail regarding the chilling effect disclosure would have on the agency's decision-making process because "non-final determinations, [ ] based on an incomplete review of the evidence and law would lead to confusion regarding why other potential alternative determinations were not adopted or were ultimately changed in the final decision[,]" Hinton Decl. ¶ 25, and would have a "chilling effect" on internal deliberations and the drafting of benefits determinations specifically, id.  These assessments go beyond the mere "cookie-cutter" representations rejected by other courts and adequately describe the

foreseeable harm to the specific deliberative process in the context of veterans' benefits determinations.  Thus, the Court concludes that these records were properly withheld pursuant to FOIA Exemption 5.

The Court now turns to the remaining records, which are correspondence and draft correspondence between agency employees regarding the status of one of the plaintiff's benefits requests or seeking guidance on how the agency should proceed regarding the plaintiff's requests for records, i.e., Documents 565, 569, 0574–0575, 0753–0754, 0757–0758, 0578–0579, 0587, 0646–0647, 0753–0754, 0757–0758, and 0987–0988.  Although it is true that "[d]ocuments and communications regarding the processing of, and recommendations for responding to, specific FOIA requests have consistently been found to qualify as predecisional and deliberative[,]" SmartFlash, LLC v. U.S. Patent & Trademark Off., No. 23-cv-3237 (BAH), 2024 WL 4836402, at *4 (D.D.C. Nov. 20, 2024) (listing cases), the agency must nonetheless provide sufficient information regarding "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents[,]" Elec. Frontier Found., 826 F. Supp. 2d at 168 (quoting Arthur Andersen & Co., 679 F.2d at 258).  Here, although the defendant provides some description of this correspondence, the Hinton Declaration and Vaughn index only generally describe the participating individuals as non-Senior Executive Service staff, without any information as to their role in the decisionmaking process or whether these communications reflected their "evaluations, recommendations, discussions and analysis" to their superiors.  Machado Amadis, 971 F.3d at 370.  On the other hand, the description of these records in the Vaughn index appears to indicate that the correspondence and draft correspondence contained in these records, rather than forming part of a deliberative process, merely appears to provide a status update on the

agency's processing of the plaintiff's various requests or contains correspondence "seeking guidance" on certain processing issues, see, e.g., Vaughn Index at 4.  Therefore, the Court currently lacks sufficient information to conclude that these records "reflect the give and take of the deliberative process" in the determination of how to process the plaintiff's FOIA request and his other benefits requests.  Pub. Citizen v. Off. Mgmt. & Budget, 598 F.3d 865, 876 (D.C. Cir. 2010).

Additionally, the defendant has not yet adequately carried its independent burden of establishing foreseeable harm regarding the disclosure of these documents.  As indicated above, the Hinton Declaration notes the chilling effect of disclosing non-final determinations.  See Hinton Decl. ¶ 24.  However, while the Hinton Declaration briefly mentions in passing deliberations regarding those non-final determinations, it is devoid of any information about the foreseeable harm that would be caused by disclosure of correspondence and draft correspondence between agency employees regarding the status of one of the plaintiff's benefits requests or seeking guidance on how the agency should proceed regarding the plaintiff's requests for records, such as which VA office would be responsible for processing that request or providing status updates regarding the plaintiff's request.  See id.  And, the Vaughn index offers no support for the withholding because it merely recites the same "cookie-cutter" formulation of harm as related to each withheld document.  Reps. Comm. for Freedom of the Press, 3 F.4th at 371; see, e.g., Vaughn Index at 4 ("Releasing correspondence like this would have a chilling effect on all members of the Department, inhibit further frank discussions important to the functioning of the executive branch, and cause confusion.").  Without more, the Court cannot conclude that the defendant has established foreseeable harm arising from the disclosure of this correspondence.  Therefore, the Court will deny without prejudice the defendant's motion for

summary judgment as to these records and order the defendant to provide a supplemental affidavit that enables the Court to properly assess whether this correspondence was properly withheld pursuant to FOIA Exemption 5.

    **b.**    **Exemption 6**

Under FOIA Exemption 6, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure.  5 U.S.C. § 552(b)(6).  "The 'primary purpose' of Exemption 6 is to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'"  Human Rts. Def. Ctr. v. U.S. Park Police, 126 F.4th 708, 713 (D.C. Cir. 2025) (quoting U.S. Dep't of State v. Wash. Post. Co., 456 U.S. 595, 599 (1982)).  "Exception 6 may apply to entire files or may call for redaction of 'bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy.'"  Id. (quoting Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152–53 (D.C. Cir. 2006)).

The Court must undertake a two-part inquiry to determine whether Exemption 6 applies. First, the Court must determine "whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest."  Id. (quoting Niskanen Ctr. v. Fed Energy Regul. Comm'n, 20 F.4th 787, 791 (D.C. Cir. 2021)).  "The government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released[,]" Prison Legal News, 787 F.3d at 1147 (citing Ripskis v. Dep't of Hous. & Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984)), and may satisfy this burden with affidavits "if they contain reasonable specificity of detail rather than conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith[,]" Jud. Watch, Inc. v. U.S. Secret

Serv., 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006)).

If the agency satisfies its initial burden, the Court must then "balance the individual's right of privacy against the public interest in disclosure." Niskanen Ctr., 20 F.4th at 791 (quoting Prison Legal News, 787 F.3d at 1147). "[T]he balancing inquiry focuses 'not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.'" Id. (quoting Schrecker v. U.S. Dep't of Just., 349 F.3d 657, 661 (D.C. Cir. 2003)). And, the only relevant public interest in this analysis is "the extent to which disclosure of the information sought would 'shed light on the agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dep't of Def. v. Fed. Labor Rels. Auth., 510 U.S. 487, 497 (1994) (quoting Reps. Comm. for Freedom of the Press, 489 U.S. at 773).

Here, the Court must apply this two-step inquiry to determine whether the defendant properly redacted personally identifiable information about low-level VA employees pursuant to FOIA Exemption 6. First, the Hinton Declaration states that Ms. Hinton is "personally aware of VA employees being subjected to harassment by Veteran claimants in the past for being associated with decisions as these are claims for benefits that deeply affect Veterans." Hinton Decl. ¶ 19. The Hinton Declaration represents that these concerns are applicable in this case because the plaintiff "has sent or copied me on at least . . . []256[] emails addressing his records requests, this litigation, and VR[&]E claims." Id. Indeed, another VA attorney has noted similar concerns regarding the plaintiff in another FOIA case. See Alford v. McDonough, No. 20-cv-2805 (ACR), 2024 WL 3673311, at *5 (D.D.C. Aug. 2, 2024) (noting that a declaration from another VA attorney represents that the plaintiff had sent or copied him on at least 119 such

emails).  Second, although the Court must generally balance the public interest against the

privacy concerns of these low-level VA employees, the Court perceives of no public interest in

the disclosure of this information because the disclosure of these VA employees' identities

would in no way "she[d] light on the agency's performance of its statutory duties' or otherwise

let citizens know 'what their government is up to.'"  U.S. Dep't of Def., 510 U.S. at 497 (quoting

Reps. Comm. for Freedom of the Press, 489 U.S. at 773).  Thus, the Court concludes that the

defendant has properly withheld the information at issue pursuant to FOIA Exemption 6.  And,

for the same reasons explained above, the Court concludes that the defendant has adequately

established the foreseeable harm to the privacy interests of those career agency employees that

would be caused by the release of the redacted personal information.

### 3.  Segregability

The Court now turns to whether the defendant has provided all reasonably segregable

records to the plaintiff.  Under the FOIA, "[a]ny reasonably segregable portion of a record shall

be provided to any person requesting such record after deletion of the portions which are

exempt."  5 U.S.C. § 552(b); see also Roth v. U.S. Dep't of Just., 642 F.3d 1161, 1167 (D.C. Cir.

2011) ("[E]ven if [the] agency establishes an exemption, it must nonetheless disclose all

reasonably segregable, nonexempt portions of the requested record(s)." (alteration in original)

(citation omitted)).  Thus, "[i]t has long been the rule in this Circuit that non-exempt portions of

a document must be disclosed unless they are inextricably intertwined with exempt portions."

Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.)

(alteration in original) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d

242, 260 (D.C. Cir. 1977)).  Accordingly, "[b]efore approving the application of a FOIA

exemption, the district court must make specific findings of segregability regarding the

documents to be withheld." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

In order to assess segregability, a "district court must be provided with a 'relatively detailed description' of the withheld material." Jud. Watch, Inc. v. U.S. Dep't of Def., 245 F. Supp. 3d 19, 36 (D.D.C. 2017) (Walton, J.) (citing Goldberg v. U.S. Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987)).  To comply with this requirement, "[a]gencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether 'the result would be an essentially meaningless set of words and phrases.'"  Id. at 36 (citing Mead Data Ctr., 566 F.2d at 261).  "[T]o show that an entire document cannot be produced[,]" an agency must conduct "[a 'document-by-document' review and [provide] a declaration that each piece of information that is withheld is not reasonably segregable[.]"  Id. at 36–37 (citing Juarez v. U.S. Dep't of Just., 518 F.3d at 61).  Although "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" Ecological Rts. Found. v. U.S. Env't Prot. Agency, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (quoting Sussman, 494 F.3d at 1117), an "agency must provide a detailed justification for [the exempt material's] non-segregability[,]" id. (quoting Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002)) (internal quotation marks omitted) (alterations in original).  Generally, "[a]ffidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a Vaughn index describing the withheld record, suffice."  Id. (quoting Johnson, 310 F.3d at 776).  However, the Vaughn index "must provide a particularized

explanation of non-segregability for <u>each</u> document." <u>Ctr. for Biological Diversity v. U.S. Env't</u> <u>Prot. Agency</u>, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).

Here, as to those documents withheld in full pursuant to FOIA Exemption 5, the Court concludes that the defendant has not adequately shown that it complied with its obligation to disclose segregable material. The Hinton Declaration merely states that, as to each of the plaintiff's FOIA requests, "all segregable information was provided." Hinton Decl. ¶ 14. And, the <u>Vaughn</u> index fails to provide much more. Although the <u>Vaughn</u> index offers greater detail as to the length and contents of each withheld document, as well as descriptions of withheld portions of documents and the justification for those withholdings, it only once references segregability, and does so only in passing. <u>See</u> <u>Vaughn</u> Index at 2 (noting that "[a]ll portions of this unfinalized, draft document which are not reasonably segregable, have been withheld" pursuant to the deliberative process privilege). Nowhere does the defendant represent that any non-exempt, factual portions of these records or correspondence are "inextricably intertwined with [the] exempt portions" of those records, <u>Wilderness Soc'y</u>, 344 F. Supp. 2d at 18 (quoting <u>Mead Data Cent.</u>, 566 F.2d at 260), nor has the defendant provided a "detailed justification" for each of the withheld documents' nonsegregability, <u>Ecological Rts. Found.</u>, 541 F. Supp. 3d at 66 (quoting <u>Johnson</u>, 310 F.3d at 776). Without more, the Court must conclude that the defendant has not yet met his burden of showing that the agency has released all reasonably segregable, nonexempt information in response to the plaintiff's FOIA requests based on its withholdings pursuant to FOIA Exemption 5.

However, the Court concludes that the defendant has adequately established that he complied with his obligation to release segregable information as to those records produced to the plaintiff with redactions pursuant to FOIA Exemption 6. The Hinton Declaration makes

clear that the VA "redacted personally identifiable information (PII), including names, signatures, contact numbers that could be used to identify people, and the non-domain portions of email addresses."  Hinton Decl. ¶ 17.  The Hinton Declaration further represents that "[w]hile each redaction was considered individually, all redactions of employee PII corresponds to individuals who are [non-Senior Executive staff] VA employees."  Id.  Therefore, based on the Hinton Declaration, the Court concludes that the defendant has provided an adequate explanation that it released all reasonably segregable information relating to those redactions pursuant to FOIA Exemption 6.

Accordingly, the Court must deny without prejudice the defendant's motion for summary judgment as to the responsive documents withheld in full pursuant to FOIA Exemption 5 and grant the defendant's motion for summary judgment as to the documents it produced with redactions pursuant to FOIA Exemption 6.  Therefore, the Court will order the defendant to provide an additional declaration attesting to the agency's segregability assessment as to each document withheld pursuant to FOIA Exemption 5.

**B.    The Plaintiff's May 2021 Privacy Act Request**

Having concluded that it must grant in part and deny in part the defendant's motion for summary judgment as to the plaintiff's FOIA claims, the Court now turns to the plaintiff's May 2021 Privacy Act request that he "be permitted an in[-]person review of [his] vocational rehabilitation employment and readiness files, VBMS files, and [C-WINRS] hard copy and[/]or electronic records."  Def.'s Facts ¶ 1.

Pursuant to the Privacy Act, an agency shall "upon request by an individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form

comprehensible to him[.]" 5 U.S.C. § 552a(d)(1). And, the Privacy Act provides that an "individual may bring a civil action against the agency . . . [w]henever any agency . . . refuses to comply with an individual request" for access pursuant to § 552a(d)(1). Id. § 552a(g)(1)(B).

The defendant argues that he is entitled to summary judgment as to this request as well because the defendant "produc[ed] the requested records to [the p]laintiff on a compact disk[,]" Def.'s Mot. at 15, and because it was not required under the Privacy Act to provide the plaintiff with in-person review of those records at a government facility, see id. The Court agrees. By its plain text, the Privacy Act only requires that an agency shall "upon request by an individual to gain access to his record or to any information to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him[.]" 5 U.S.C. § 552a(d)(1) (emphasis added). There is no doubt that the agency permitted the plaintiff to "review the record[s]" he requested, id., and produced to him a copy of those records "in a form comprehensible to him[,]" id., i.e., the compact disk. Nowhere in the record has the plaintiff argued that the agency denied him access to the records he requested and is entitled to receive or that it did not produce to him copies that were comprehensible. Thus, the Court concludes that it must grant the defendant's motion for summary judgment as to the plaintiff's Privacy Act claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny without prejudice in part the defendant's motion for summary judgment. Specifically, the motion is granted as to (1) the defendant's search for responsive records; (2) the defendant's redaction of personally identifiable information from the documents produced pursuant to FOIA Exemption 6 and release of all segregable information contained within those documents produced; and

(3) the plaintiff's May 2021 Privacy Act request.  The motion is denied without prejudice as to

the defendant's assertion of FOIA Exemption 5.

      **SO ORDERED** this 10th day of November, 2025.[6]


REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.