UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEROY ALFORD,

       Plaintiff,

    v.

DOUGLAS A. COLLINS, Secretary of
Veterans Affairs,

       Defendant.

Civil Action No. 22-2856 (RBW)

**MOTION FOR RENEWED SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Background ..................................................................................................................... 1

Legal Standards ............................................................................................................. 2

Argument ........................................................................................................................ 4

     I.      The VA Properly Withheld Exempt Information ................................................... 4

          A.     The Withheld Information in the Remaining Exemption 5 Material Is Inter-Agency Communication. .................................................................... 6

          B.     The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional ............................................................................ 8

          C.     The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative ............................................................................ 11

          D.     The VA Has Established that Disclosure of the Withheld Records Will Cause Foreseeable Harm .......................................................................... 12

     II.     The VA Produced All Segregable Information ................................................... 14

Conclusion ................................................................................................................... 17

**TABLE OF AUTHORITIES**

Cases .................................................................................................................... Page(s)

*Access Reps. v. Dep't of Just.*,
  926 F.2d 1192 (D.C. Cir. 1991) ................................................................................ 9
*Agrama v. IRS*,
  282 F. Supp. 3d 264 (D.D.C. 2017) ....................................................................... 14
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................. 2, 3
*Boyd v. Crim. Div.*,
  475 F.3d 381 (D.C. Cir. 2007) ................................................................... 14, 15, 16
*Brayton v. Off. of U.S. Trade,*
  *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ....................................................................... 3
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................. 2
*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................ 9
*Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (2021) ............................................................................ 11, 12, 13, 14
*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................................ 6, 7, 8
*Dep't of Just. v. Julian*,
  486 U.S. 1 n.1 (1988) .......................................................................................... 7, 8
*Dep't of Just. v. Tax Analysis*,
  492 U.S. 136 (1989) ................................................................................................ 4
*Dep't of Lab.*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................... 3
*EPA v. Mink*,
  410 U.S. 73 (1973) ................................................................................................... 6
*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
  141 S. Ct. 777 (2021) .................................................................................... 6, 8, 11
*Frontier Found. v. Dep't of Just.*,
  739 F.3d 1 (D.C. Cir. 2014) .................................................................... 9, 10, 12, 14
*Ground Saucer Watch, Inc. v. CIA*,
  692 F.2d 770 (D.C. Cir. 1981) ................................................................................ 4
*Hall v. Dep't of Just.*,
  273 F. Supp. 3d 77 (D.D.C. 2017) ........................................................................... 3
*Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ............................................................................... 8
*Jud. Watch, Inc. v. Dep't of State*,
  306 F. Supp. 3d 97 (D.D.C. 2018) ........................................................................... 5
*Judicial Watch, Inc. v. Department of Justice*,
  20 F.4th 49 (D.C. Cir. 2021) ............................................................................ 11, 12
*Larson v. U.S. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ................................................................................ 3

*Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ................................................................ 6, 8, 11
*Mead Data Central, Inc. v. U.S. Dept. of Air Force*,
    566 F.2d 242 (D.C. Cir 1977) ................................................................ 14
*Media Rsch. Ctr. v. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ........................................................ 3
*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................ 3
*Muhammad v. U.S. Customs & Border Prot.*,
    559 F. Supp. 2d 5 (D.D.C. 2008) ............................................................ 4, 5
*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
    216 F.3d 1180 (D.C. Cir. 2000) .............................................................. 4
*Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................................ 6, 8, 9, 10
*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ................................................................ 4
*Renegotiation Bd. v. Grumman Aircraft*,
    421 U.S. 168 (1975) ............................................................................ 8
*SafeCard Servs. Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) .............................................................. 4
*Summers v. Dep't of Just.*,
    140 F.3d 1077 (D.C. Cir. 1998) .............................................................. 14
*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ................................................................ 3
*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir. 1975) .............................................................. 11
*Weisberg v. Dep't of Just.*,
    627 F.2d 365 (D.C. Cir. 1980) ................................................................ 3

Statutes

5 U.S.C. § 551(1) ...................................................................................... 7
5 U.S.C. § 552 ......................................................................................... 1, 2
5 U.S.C. § 552(a)(4)(B) ............................................................................ 4
5 U.S.C. § 552(a)(8)(A)(i) ........................................................................ 12
5 U.S.C. § 552(b) ..................................................................................... 4, 14
5 U.S.C. § 552(b)(5) ................................................................................ 5, 7
5 U.S.C. § 552(f) ..................................................................................... 7

Rules

Fed. R. Civ. P. 56 ..................................................................................... 2

Defendant, the Secretary of the Department of Veterans Affairs ("VA" or "Agency"), through counsel, respectfully renews Defendant's motion for summary judgment as to the remaining claims in this case arising under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Specifically, Defendant moves, again, for summary judgment on the VA's application of Exemption 5 to withhold certain information in emails and communications protected by the deliberative process privilege that were produced in response to the underlying FOIA/Privacy Act Requests submitted by Plaintiff Leroy Alford, who is proceeding pro se. Because the undisputed record demonstrates that the VA properly applied Exemption 5 to withhold emails and communications protected by the deliberative process privilege and that all non-exempt information was reasonably segregated and produced, such that no further disclosure of information could be made without triggering foreseeable harm, summary judgment should be granted in favor of Defendant. In support of this renewed motion for summary judgment, the VA submits the Declaration of Christian Elkington and a Supplemental *Vaughn* Index, filed herewith. As demonstrated below, and in the accompanying Supplemental Statement of Material Facts Not in Genuine Dispute ("Supplemental Statement"), and in the Elkington Declaration and Supplemental *Vaughn* Index, there is no genuine issue of material fact as to Defendant's Exemption 5 withholdings and segregability assessment that remains at issue in this case, and Defendant is entitled to judgment as a matter of law.

## BACKGROUND

The background of this case and Plaintiff's information requests to the VA is recounted in the Court's memorandum opinion and order dated November 10, 2025 ("Memorandum Opinion"). *See* Mem. Op. (ECF No. 91). A brief summary of the facts relevant to this renewed motion for summary judgment are as follows.

This case concerns four FOIA/Privacy Act requests submitted by Plaintiff on May 10, 2021, January 31, 2022, May 16, 2022, and August 31, 2022. *See id.* at 2-4. The VA filed its motion for summary judgment as to all claims related to these four requests on May 23, 2025. *See* Def.'s Mot. (ECF No. 88).  Plaintiff filed no response in opposition to or cross motion for summary judgment. *See* Mem. Op. (ECF No. 91) at 7. Thereafter, the Court issued its Memorandum Opinion granting in part and denying in part Defendant's motion for summary judgment. *See generally id.*

Specifically, the Court's Memorandum Opinion granted Defendant summary judgment as to Defendant's (1) "search for responsive records;" Defendant's "redaction of personally identifiable information from the documents produced pursuant to Exemption 6 and release of all segregable information contained within those documents produced;" and (3) the Plaintiff's May 21, Privacy Act request. *Id.* at 26. The Court, however, denied, without prejudice Defendant's motion for summary judgment as to the propriety of certain Exemption 5 withholdings and the release of all segregable information contained within all Exemption 5 materials. *See id.* at 24-26.

Now, this renewed motion and the accompanying Elkington Declaration, along with the Supplemental *Vaughn* Index address the propriety of the VA's remaining records withheld under Exemption 5 and the VA's segregabiltiy review of all Exemption 5 materials.

## LEGAL STANDARDS

Summary judgement is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Anderson*, 477 U.S. at 248.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Id.*  Once the moving party has met its burden, the nonmoving party "may not rest upon the

mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the Plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet this burden, the agency may rely on reasonably detailed and non-conclusory declarations. *See Hall v. Dep't of Just.*, 273 F. Supp. 3d 77, 83 (D.D.C. 2017); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)) "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith,

which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).

## ARGUMENT

### I. The VA Properly Withheld Exempt Information

FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysis*, 492 U.S. 136, 150-51 (1989). The agency bears the burden of demonstrating that the documents it has withheld fall into one of those exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

Here, the VA withheld records under FOIA Exemption 5 that were protected by deliberative process. *See* Declaration of Danielle Hinton ("Hinton Decl.") (ECF No. 88-3) ¶ 14. In its Memorandum Opinion, this Court held that ten of these records containing deliberative process material were properly withheld under Exemption 5. *See* Mem. Op. (ECF No. 91) at 16-17 (citing *Vaughn* Index (ECF No. 88-12) at 1–2, 5–7 (entries 0136–0139, 0145–0148, 0217–0220, 0552–0553, 0698–0701, 0713–0716, 0725–0728, 0738–0741, 0786–0789, and 0996–0997). Specifically, those records comprised "draft documents and internal agency correspondence relating to the advisory opinion, the plaintiff's inquiries about his benefits requests, or his request for equitable relief." Mem. Op. (ECF No. 91) at 16. The Court, however, found that the Exemption

5 withholdings, applied to the remaining records containing deliberative process material, were not sufficiently justified and thus, denied, without prejudice, summary judgment as to the propriety of those withholdings. *See id.* at 16-17 (citing *Vaughn* Index (ECF No. 88-12) at 3–8 (entries 565, 569, 0574–0575, [. . . ], 0578–0579, 0587, 0646–0647, 0753–0754, 0757–0758, 0987–0988). The Court described this latter category of records as those that comprise "internal agency correspondence, including draft correspondence, regarding the status of one of the plaintiff's benefits requests or seeking guidance on the processing of plaintiff's FOIA requests at issue in this litigation." *Id.* at 16.

Because the Court already found that the VA justified its Exemption 5 withholdings as to the first category of Exemption 5 material at issue in this case, Defendant incorporates by reference from Defendant's initial summary judgment motion, the undisputed facts and argument supporting those ten records in this renewed summary judgment motion, and focuses on the remaining records containing Exemption 5 withholdings as follows. *See* Suppl. *Vaughn* Index at 2-5, 7-9 (entries 565, 569, 0574–0575, 0578 (middle of the page), 0578–0579, 0587, 0646–0647, 0753–0754, 0757–0758, 0987–0988) (highlighted for ease of reviewability).

FOIA Exemption 5, allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and inter-agency communications are between employees of different agencies or departments. *Jud. Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary). One well-recognized civil discovery privilege that permits agencies to

withhold records under Exemption 5 is the deliberative process privilege. *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure"); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl'") (referencing S. Rep. No. 813, at 9 (1965)).

To properly assert the deliberative process privilege under Exemption 5, the VA must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). With the supporting Elkington Declaration and Supplemental *Vaughn* Index, for the remaining Exemption 5 records at issue in this case, the VA has shown both.

### A. The Withheld Information in the Remaining Exemption 5 Material Is Inter-Agency Communication.

As a threshold matter, FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The FOIA statute defines "agency" as "an authority of the Government of the United States" including "any executive department," "establishment in the executive branch of the Government," or "independent regulatory agency." 5 U.S.C. §§ 551(1), 552(f). "Intra-agency" memorandum generally refers to those documents "addressed both to and from employees of a single agency." *Klamath*, 532 U.S. at 9-10 (quoting *Dep't of Just. v. Julian*, 486 U.S. 1, at 18 n.1 (1988) (Scalia, J. dissenting)).

Here, as to the remaining Exemption 5 material at issue in this case, the VA withheld portions of email communications between employees of the VA, only, which, therefore, comprise intra-agency communications under Exemption 5. As the Court already described, these records comprise "*internal agency correspondence*, including draft correspondence, regarding the status of one of the plaintiff's benefits requests or seeking guidance on the processing of the plaintiff's FOIA requests at issue in this litigation." Mem. Op. (ECF No. 91) at 16. For ease of reference throughout this memorandum, the remaining Exemption 5 materials can be divided into three categories.

The first category of remaining Exemption 5 materials comprises six records of communications that contain an email sent between a representative from the VA's Veterans Service Center ("VSC representative") and a direct supervisor, referred to as a supervisory coach within the VA ("VSC Representative Emails"). *See* Suppl. *Vaughn* Index at 2-5 (entries 565; 569; 574-575; 578-579; 587; 646-647). The second category of remaining Exemption 5 materials comprises one communication containing withheld information in an email between the supervisory coach for the VSC Representative and the next level of supervisors within the VA ("Supervisory Coach Email"). *See id.* at 4 (entry 578 (middle part of page 1154)). Finally, the third category of remaining Exemption 5 materials comprises three communications where information

was withheld in an email thread between employees in the VA's Baltimore Regional Office, Veterans Readiness and Employment Office that discussed edits to a draft response to send to the North East VBA Director, who was inquiring into the status of Plaintiff's Chapter 31 benefits ("Response Emails"). *See id.* at 7-9 (entries 753-754; 757-758; 987-0988).

## B.     The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional

To qualify for deliberative process protection under Exemption 5, specifically, the United States Supreme Court has held that "a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8.  Interpreting the second condition, the Supreme Court stated that Exemption 5 covers civil discovery privileges, including the deliberative process privilege, a form of executive privilege. *Id.*  The deliberative process privilege permits the agency to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150.  To be covered by this privilege, the agency must show that the withheld documents are both predecisional and deliberative. *Machado, 971 F.3d at 370.*

"A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter." *Sierra Club*, 592 U.S. at 268.  Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still

protects information that was part of the agency's "group thinking in the process of working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process. *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

Here the remaining Exemption 5 material at issue in this case is predecisional. First, as to the VSC Representative Emails, the withheld information in these six communications is predecisionsal because it comprises an email discussion between a VSC representative and his supervisor where the VSC representative is providing information to assess the sufficiency of the VA's response to FOIA requests for the purposes of determining the agency's response to that request and other actions. *See* Suppl. *Vaughn* Index at 2-5 (entries 565; 569; 574-575; 578-579; 587; 646-647). Specifically, the emails "outlin[e] steps that VSC and other VA components had taken to address Mr. Alford's prior requests and its resulting litigation and questioning both whether VSC's prior response was sufficient with regard to the litigation and whether that response would sufficiently address Mr. Alford's new request." *Id.* Thus, the withheld information in the emails contains protected discussions aimed to work through "a combination of facts and policy positions," as well as "agency obligations" including the obligation "to comport with prevailing law and agency policy," and "competing duties to defend against litigation," in order to assist with assessing future courses of action by the agency. *Id.*

Second, as for the Supervisory Coach Email, the information that was withheld in an email between a supervisor and another level of supervisors is also predecisional because it comprises

- 9 -

the supervisory coach of the VSC representative forwarding the same assessment from VSC representative, just discussed, to higher level supervisors "for their consideration" and determination as to the VA's next course of action, including a determination as to "what VA office would be responsible for processing the FOIA requests at issue in this litigation, in accordance with VA's FOIA regulations and applicable FOIA processing policies." *Id.* at 4 (entry 578 (middle page of 1154)). Thus, this document reflects pre-decisional discussions "about the VA's assessment and evaluation of the competing priorities of providing direct veteran services such as issuance of benefits decisions and the fulfillment of legal timelines present in the FOIA processing policy and litigation demands." *Id.*

Third, as to the Response Emails, the withheld information in these last three communications is also predecisional because the records contain emails between an employee and his supervisor, both in the Veterans Readiness and Employment Office in the VA's Baltimore Regional Office, that discuss edits to a "working draft . . . created by [the] subordinate" employee to send to the North East VBA Director. *Id.* at 6-9 (entries 753-754; 757-758; 987-0988). The clear edits, such as "strike[] through words," on the page show that the communication is predecisional as to what the supervisor would deem correct to include in the final response to send to the North East VBA Director. *Id.* Moreover, the response, as a whole, to the North East VBA Director, is also predecisional because it was being prepared for the Director in "response to [the] North East VBA Director['s] inquiry" into the status of Plaintiff's Chapter 31 benefits request, which was necessary for the Director to have in order to assess a "Clear and Unmistakable Error" challenge ("CUE challenge") to a "benefits entitlement decision." *Id.* Thus, this draft email response regarding the status of Plaintiff's Chapter 31 benefits is predicational because it ultimately assists the VA in reaching a decision on a CUE challenge. *See id.*

- 10 -

C.     **The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative**

Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club,* 592 U.S. at 268, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters).

In order to assist court's in evaluating whether disputed records are deliberative, the D.C. Circuit in *Judicial Watch, Inc. v. Department of Justice*, 20 F.4th 49, 55 (D.C. Cir. 2021), advised agencies to explain four factors: (1) what deliberative process is involved; (2) the role played by the disputed documents in the course of that process; (3) the nature of the decision making authority vested in the person issuing the disputed document; and (4) the relative position in the agency's chain of command of the persons authoring and receiving the document.

Here, all remaining Exemption 5 materials are also deliberative. According to the Supplemental *Vaughn* Index, and as discussed above, each of the remaining communications at issue reflect a clear back and forth between an agency employee and that employee's supervisor, who has either final decision-making authority or is referring the communication to other supervisors with final decision-making authority. *See supra*, Section I.B. These communications also reflect the give-and-take of the consultative process to assess either (1) the allocation of agency resources in responding to a FOIA request, *see* VSC Representative Emails, Suppl. *Vaughn*

- 11 -

Index, at 2-5 (entries 565; 569; 574-575; 578-579; 587; 646-647); Supervisory Coach Email, *id.* at 4 (entry 578 ), or (2) the agencies' assessment of a prior benefits decision in light of a CUE challenge, *see* Response Emails, *id.* at 7-9 (entries 753-754; 757-758; 987-0988).

  **D.**  **The VA Has Established that Disclosure of the Withheld Records Will Cause Foreseeable Harm.**

  In addition to showing that specific documents qualify for protection under a named Exemption, the FOIA Improvement Act of 2016 further requires that an agency show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

  The VA's Supplemental *Vaughn* Index, and the Elkington Declaration demonstrate that the remaining Exemption 5 material at issue in this case, if disclosed, would cause foreseeable harm. Specifically, as to the VSC Representative Emails and the Supervisory Coach Email, the communications containing email discussions between the VSC Representative and his supervisor coach, and the supervisory coach and the next level of supervisors, if released, would have a "chilling effect" on the VA's internal decision-making process for responding to FOIA requests,

that would "inhibit further frank discussions important to the functioning of the VA and the executive branch." Suppl. *Vaughn* Index at 2-5 (entries 565; 569; 574-575; 587; 646-647). Specifically, as the Supplemental *Vaughn* Index discusses further, the release of these communications "would expose the VA to unnecessary public judgment of predecisional discussions as to the agency's allocation of its resources in responding to a FOIA request that is pending litigation or that may soon be pending litigation[,]" which also "do[es] not reflect the agency's final determinations." *Id.* Thus, releasing this information "would not only lead to public confusion" as to the VA's course of action taken in similar situations involving the agency's response to FOIA requests should the public "believe that these same discussions were happening in response to other FOIA requests," but will also risk exposing the agency "to criticism and potential false liabilities, should the public question the VA's discussions regarding its response to the FOIA requests at issue in these communications and believe that these same discussions were happening in response to other FOIA requests." *Id.*  As a result, "[t]hose involved in regularly discussing the VA's response to FOIA requests would, therefore, be discouraged from engaging in that decision-making process in the future, at the expense of ensuring the agency's response to future FOIA requests are prepared efficiently, with proper assistance, guidance, and in compliance with all regulations and laws." *Id.*

As to the Response Emails, should information in these last three communications be released, they too, would cause foreseeable harm. As the Supplemental *Vaughn* Index details, these records reflect the "agency's internal assessment of a CUE challenge to a prior benefits decision, but does not reflect the VA's ultimate decision as to the merits of that CUE challenge[,]" and "[t]herefore its release would not only lead to public confusion," but also cause "a chilling effect on members of the VA who engage in review and assessment of benefits decisions, thus inhibiting

further and frank discussions important to the functioning of the VA and the executive branch." *Id.* at 6-9 (entries 753-754; 757-758; 987-988), This is because "the disclosure of this predecisional assessment would risk exposing the VA to criticism and potential false liabilities should the public question the VA's internal predecisional assessments and believe that this assessment applies to other similar CUE challenges, even if the VA later rejected its internal predecisional assessment, or deemed it incorrect or inconsistent with accepted agency policy and or governing law." *Id.* Thus, those involved in regularly discussing the VA's "review and assessment of benefits decisions," would be discouraged from engaging in that decision making process in the future, causing the chilling effect, just described. *Id.*

## II.    The VA Produced All Segregable Information

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C. Cir 1977). Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the material to be withheld.  *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998).  Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

Here, the VA met its segregability obligations with regards to its processing and production of Exemption 5 material responsive to Plaintiff's FOIA requests at issue in this case, as detailed,

further, in the Elkington Declaration. According to Mr. Elkington, the VA applied the same process to review all Exemption 5 materials for purposes of releasing all reasonably segregable non-exempt information to Plaintiff that was not inextricably intertwined with exempt information, the release of which would foreseeable harm. *See* Elkington Decl. ¶ 16. Namely, a particularized review was performed of each document to determine which parts of that document could be reasonably segregable for release. *See generally* Suppl. *Vaughn* Index. Specifically, for documents implicated by Exemption 5, the VA reviewed the records carefully, line-by-line "to determine whether any nonexempted information could be reasonably segregated and produced," without causing foreseeable harm. Elkington Decl. ¶ 16. "After completing this line-by-line review of all records containing Exemption 5 material, it was determined that, as for documents contained in entries 565, 569, 0574–0575, 0578, 0578–0579, 0587, 0646–0647, 0753–0754, 0757–0758, and 0987–0988, all portions of these records, which comprise communications, that are both factual and are not inextricably intertwined with evaluations, analysis and deliberative considerations of the authoring employee have been reasonably segregated and provided to the requester and all remaining factual material that has been withheld in part is inextricably intertwined with deliberative material such that releasing it would result in release of a few additional sets of meaningless words and phrases that would not add context to what is already known about this document." *Id.*

According to Mr. Elkington, "[i]t was also determined that for the remaining records listed in the Supplemental *Vaughn* Index which were withheld in part under Exemption 5, there is no more non-exempt information that could be reasonably segregable; factual material within those withheld portions is inextricably intertwined with deliberative material such that releasing it would result in release of a few additional sets of meaningless words and phrases that would not add

- 15 -

context to what is already known about this document." *Id.* For these records, reasonably segregable information "such as certain dates, email signatures, office titles and factual information that is not being deliberatively discussed" in the record were released. Suppl. *Vaughn* Index 1-2, 6-9 (entries 136-139; 145-148; 217-220; 552-553; 698-701; 713-716; 725-728; 738-741; 786-789; 996-997). "The factual information" withheld in those records, thus included "certain dates or decision titles . . . inextricably intertwined with the deliberative material at issue," such as deliberations between the final agency decision maker and subordinate employees, and with other supervisor officers and subordinate employees. *Id.*

* * *

In sum, the Court should find that the undisputed record shows that the VA properly applied Exemption 5 to protect deliberative process material withheld in the remaining records at issue in this case, and that it reasonably segregated all non-exempt portions of all Exemption 5 materials subject to release.

## CONCLUSION

Accordingly, for all of the reasons set forth above and in the accompanying declaration and supplemental *Vaughn* Index, Defendant respectfully submits that this renewed motion for summary judgment should be granted

Dated: February 18, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ Anna D. Walker*_____
ANNA D. WALKER
D.C. Bar No. 90037215
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2544

*Attorneys for the United States of America*

- 17 -