**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEROY ALFORD,                                                )
                                                             )
                    Plaintiff,                               )
                                                             )
         v.                                                  )   Civil Action No. 22-2856 (RBW)
                                                             )
                                                             )
DOUGLAS A. COLLINS, Secretary of the                         )
Department of Veterans Affairs,                              )
                                                             )
                    Defendant.                               )
                                                             )

**MEMORANDUM OPINION**

The plaintiff, Leroy Alford, a "disabled, . . . [twenty-three]-year retired veteran of the

Gulf War[,]" Complaint ("Compl.") ¶ 2, ECF No. 1, who is proceeding pro se, brought this civil

action against the defendant, Douglas A. Collins, in his official capacity as the Secretary of the

Department of Veterans Affairs (the "VA" or "Department"), asserting claims under the

Freedom of Information Act (the "FOIA") and the Privacy Act, see id. at 5–6.  On November 10,

2025, the Court granted in part and denied without prejudice in part the defendant's motion for

summary judgment and entered summary judgment for the defendant as to: (1) the adequacy of

the VA's search for responsive records; (2) the withholding of certain information pursuant to

FOIA Exemption 6; and (3) the plaintiff's Privacy Act claim.  See Order at 1 (Nov. 10, 2025),

ECF No. 92; see generally Alford v. Collins, No. 22-cv-2856 (RBW), 2025 WL 3140556

(D.D.C. Nov. 10, 2025) (Walton, J.).  Currently pending before the Court is the defendant's

Motion for Renewed Summary Judgment and Memorandum in Support Thereof ("Def.'s Mot."),

ECF No. 95. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's renewed motion for summary judgment on the remaining components of the plaintiff's FOIA claims.

## I.   BACKGROUND

The Court outlined the factual and procedural background of this case in its earlier Memorandum Opinion issued on November 10, 2025, and therefore will not reiterate every fact contained in that opinion here. See Alford, 2025 WL 3140556, at *1–4. The Court will, however, set forth the facts that remain pertinent to the resolution of the defendant's renewed motion for summary judgment.

## A.   Factual and Procedural Background

This case concerns several FOIA/Privacy Act requests submitted by the plaintiff to the defendant and component offices of the VA, only one of which remains at issue in this case.[2] As the Court previously detailed, on January 31, 2022, the plaintiff submitted a FOIA/Privacy Act request (the "January 31 Request"), seeking "a copy of an advisory opinion completed by member(s) of [the VA's] staff[,]" relating to his March 13, 2018, request for equitable relief from

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Supplemental Statement of Material Facts Not in Genuine Dispute ("Def.'s Suppl. Facts"), ECF No. 95-1; (2) the Declaration of Christian F. Elkington, Jr. ("Elkington Decl."), ECF No. 95-2; (3) the defendant's supplemental Vaughn Index ("Suppl. Vaughn Index"), ECF No. 95-3; (4) the Declaration of Danielle Hinton ("Hinton Decl."), ECF No. 88-3; (5) the defendant's first Vaughn Index ("Vaughn Index"), ECF No. 88-12; (6) the Plaintiff's Opposition to Defendant's Renewed Summary Judgment Motion ("Pl.'s Opp'n"), ECF No. 99; (7) the Plaintiff's Affidavit Responding to Defendant's Renewed Summary Judgment Motion ("Pl.'s Aff."), ECF No. 100, and its accompanying exhibits; (8) the defendant's Reply in Support of Motion for Renewed Summary Judgment ("Def.'s Reply"), ECF No. 103; and (9) the Plaintiff's Notice of Agency Withholding of Privacy Act Records ("Pl.'s Notice"), ECF No. 104.

[2] The Court has previously admonished the plaintiff that under Federal Rule of Civil Procedure 56(e), if a party "fails to address another party's assertion of fact as required by Rule 56(c), the Court may . . . consider the fact undisputed for purposes of the motion" for summary judgment. See Order at 1 (July 1, 2025) (quoting Fed. R. Civ. P. 56(e)). Thus, the plaintiff having again failed to respond to the defendant's supplemental statement of undisputed material facts, see generally Pl.'s Opp'n; Pl.'s Aff., the Court treats the defendant's facts as undisputed for the purposes of resolving the renewed motion for summary judgment.

the VA, as well as other records, including communications about his request and any materials used in supporting the drafting of the advisory opinion.  See id. at *2.

On March 28, 2023, the defendant issued to the plaintiff its initial decision letter in response to the January 31 Request, releasing to him 277 pages of records, and on April 25, 2023, the defendant issued a superseding letter correcting several clerical errors and including again the 277 pages of responsive records.  See id.  Then, on August 10, 2023, the defendant provided to the plaintiff 1,154 pages responsive to his January 31 Request, before again issuing a corrected decision letter on May 19, 2025, resolving clerical errors and reissuing those 1,154 pages of responsive records.  See id.

The defendant also withheld certain information in response to the January 31 Request. See id. at *3.  Specifically, the defendant withheld several categories of documents, which the Court previously described as: (1) "draft documents and internal agency correspondence relating to the advisory opinion, the plaintiff's inquiries about his benefits requests, or his request for equitable relief," id. at *8 (citation omitted); and (2) "internal agency correspondence, including draft correspondence, regarding the status of one of the plaintiff's benefits requests or seeking guidance on the processing of the plaintiff's FOIA requests at issue in this litigation," id. (citation omitted).

Relevant here, the defendant represents that this second category is comprised of three sets of records.  First, there are "six records of communications that contain an email sent between a representative of the VA's Veterans Service Center ('VSC representative') and a direct supervisor, referred to as a supervisory coach within the VA ('VSC Representative Emails')."  Def.'s Suppl. Facts ¶ 2.  Second, there is "one communication containing withheld information in an email between the supervisory coach for the VSC representative and the next

3

level of supervisors within the VA ('Supervisory Coach Email')." Id. ¶ 3.  Third, there are "three communications where information was withheld in an email thread between employees in the VA's Baltimore Regional Office, Veterans Readiness and Employment Office that discussed edits to a draft response to send to the Northeast [Veterans Benefits Administration ('VBA')] Director, who was inquiring into the status of [the p]laintiff's Chapter 31 benefits ('Response Emails')." Id. ¶ 4.

Taking issue with the defendant's response to his requests, the plaintiff filed his original Complaint in this case on September 20, 2022.  See Compl. at 1.  Subsequently, on February 27, 2024, the Court granted in part and denied in part the plaintiff's motion for leave to file an amended complaint.  See Order at 1 (Feb. 27, 2024), ECF No. 30.

After the Court denied several more of the plaintiff's motions to supplement his Amended Complaint, see Order at 1 (Sept. 30, 2024), ECF No. 69; Order at 7–8 (Feb. 4, 2025), ECF No. 82, the Court entered a proposed briefing schedule for the filing of cross-motions for summary judgment, see Min. Order (Apr. 21, 2025).  Pursuant to the Court's schedule, the defendant filed his first motion for summary judgment on May 23, 2025.  See Defendant's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof at 1, ECF No. 88.  The plaintiff's opposition to the defendant's motion was due on or before June 23, 2025, see Min. Order (Apr. 21, 2025), but on July 1, 2025, having received no response from the plaintiff, the Court ordered the plaintiff to "show cause in writing why the Court should not consider the facts contained within the Defendant's Statement of Material Facts Not in Genuine Dispute[ . . .] as undisputed for purposes of determining whether to grant the defendant's motion for summary judgment" pursuant to Federal Rule of Civil Procedure 56(e), Order at 2 (July 1, 2025), ECF No. 89.

On July 8, 2025, in response to the Court's July 1, 2025 order, the plaintiff requested that the Court grant him an extension of time to file his opposition to the defendant's motion until August 25, 2025, because (1) although the defendant represented that it had served the plaintiff with his motion on May 23, 2025, the plaintiff was not in fact served until June 2, 2025; and (2) because the plaintiff's post-traumatic stress disorder disability rating from the VA had been increased "after [the p]laintiff suffered a second stroke during the pendency of this lawsuit." Plaintiff's Respon[se] to the Court's 1 July 2025 Order to Show Cause at 2–3, ECF No. 90. On July 9, 2025, the Court granted in part and denied in part the plaintiff's request for the extension and ordered him to file his opposition on or before August 1, 2025. See Min. Order (July 9, 2025).

On November 10, 2025, the plaintiff having failed to file his opposition to the defendant's motion or a motion for an extension of time to file his opposition, the Court issued its Memorandum Opinion and Order granting in part and denying in part the defendant's motion for summary judgment. See generally Order (Nov. 10, 2025), ECF No. 92; Alford, 2025 WL 3140556. Specifically, the Court concluded that the defendant was entitled to summary judgment as to:

> (1) the defendant's search for responsive records; (2) the defendant's redaction of personally identifiable information from the documents produced pursuant to FOIA Exemption 6 and release of all segregable information contained within those documents produced; and (3) the plaintiff's May 2021 Privacy Act request.

Order at 1 (Nov. 10, 2025). The Court further concluded that the defendant "ha[d] adequately established that the first category of documents, i.e., Documents 0136–0139, 0145–0148, 0217–0220, 0552–0553, 0698–0701, 0713–0716, 0725–0728, 0738–0741, 0786–0789, and 0996–0997, are properly protected from disclosure to the plaintiff by the deliberative process privilege[,]"

5

Alford, 2025 WL 3140556, at *8, and that it "ha[d] provided an adequate explanation of the foreseeable harm that would arise from the disclosure of these withheld records[,]" id.

On the other hand, the Court concluded that the defendant had not justified the application of the deliberative process privilege to the second category of withheld records, i.e., records 565, 569, 0574–0575, 0753–0754, 0757–0758, 0578–0579, 0587, 0646–0647, and 0987–0988, which the Court described as "internal agency correspondence, including draft correspondence, regarding the status of one of the plaintiff's benefits requests or seeking guidance on the processing of the plaintiff's FOIA requests at issue in this litigation[.]" Id. The Court also concluded that the defendant had not satisfied its burden of establishing the foreseeable harm that would result from the release of those records. See id. at *9. Moreover, the Court concluded that the defendant "ha[d] not yet met its burden of showing that the agency has released all reasonably segregable, nonexempt information in response to the plaintiff's FOIA requests based on its withholdings pursuant to FOIA Exemption 5[,]" id. at *10, and therefore denied without prejudice the defendant's motion for summary judgment as to all records withheld pursuant to Exemption 5, see Order at 1 (Nov. 10, 2025).

In response to the Court's Order, on February 18, 2026, the defendant filed his renewed motion for summary judgment as to the remaining records. See Def.'s Mot. at 1. On June 1, 2026, the plaintiff filed his opposition to the defendant's renewed motion for summary judgment, see Pl.'s Opp'n at 1, and on June 22, 2026, the defendant filed his reply in support of his renewed motion for summary judgment, see Def.'s Reply at 1.[3]

---

[3] On July 23, 2026, after the Court notified the parties that it was finalizing this Memorandum Opinion, see Minute Order (July 21, 2026), the plaintiff filed a notice alleging that the Department "recently provided Privacy Act records to the Veterans' Claims and Appeals Commission [ ] that were not produced to [the p]laintiff in this litigation, despite falling squarely within the scope of [his] Privacy Act requests and the issues presently before the Court[,]" Pl.'s Notice at 1.

## II.    STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. Crim. Div. of U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'").  Moreover, the defendant's burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted).  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against[,]" Wash. Post Co., 863 F.2d at 101 (citation omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most

7

favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Finally, courts may not treat as conceded motions for summary judgment where the non-moving party fails to respond to the motion. See Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507–08 (D.C. Cir. 2016). Instead, the "Court may enter summary judgment only if, after fully considering the merits of the motion, it finds that it is warranted." Id. Thus, even where the non-moving party fails to respond to a motion for summary judgment, a court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, if the non-moving party fails to address the movant's assertions of fact, the Court may "consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

### III.    ANALYSIS

As noted already, the defendant renews his motion for summary judgment as to the records the Department withheld pursuant to FOIA Exemption 5, arguing that: (1) the remaining records at issue are protected by the deliberative process privilege, Def.'s Mot. at 5–6; (2) releasing the remaining records at issue would cause foreseeable harm, see id. at 12; and (3) the Department has now adequately shown that it complied with its obligation to disclose segregable

material in regards to all records withheld pursuant to FOIA Exemption 5, see id. at 14–15.  As

discussed in more detail below, the plaintiff argues that the defendant is not entitled to summary

judgment on his claims.  See generally Pl.'s Opp'n.  The Court will first address the form and

substance of the plaintiff's opposition and its relevance to the remaining claims in this case

before determining whether the defendant has now adequately established that he is entitled to

summary judgment.

## A.       The Plaintiff's Opposition

In his opposition to the defendant's renewed motion for summary judgment, the plaintiff

makes several arguments as to why the Court cannot enter summary judgment in favor of the

defendant in this case.

First, the plaintiff argues that the defendant erroneously relies only on the FOIA in his

renewed motion for summary judgment, rather than responding to the plaintiff's Privacy Act

claim.  See Pl.'s Opp'n at 1.  However, this argument is misplaced because the Court has already

entered summary judgment for the defendant on the plaintiff's Privacy Act claim.  See Order at 1

(Nov. 10, 2025); see also Alford, 2025 WL 3140556, at *11 (explaining the Court's basis for

entering summary judgment for the defendant on the plaintiff's Privacy Act claim).[4]  Because

the plaintiff's opposition is largely predicated on his belief that the defendant has erroneously

relied on the FOIA, he does not address any of the defendant's arguments justifying withholding

of the remaining records pursuant to the FOIA.  See generally Pl.'s Opp'n.[5]  Nor does the

---

[4] For the same reasons, although the Court has considered the Plaintiff's Notice of Agency Withholding of Privacy Act Records, the plaintiff's representations in his notice do not alter the Court's conclusions in this Memorandum Opinion.

[5] The plaintiff's affidavit and exhibits submitted to the Court along with the plaintiff's opposition to the defendant's renewed summary judgment motion reference a Privacy Act request submitted by the plaintiff to the defendant on May 27, 2026.  See Pl.'s Aff., Exhibit C (Email from Leroy Alford to Department of Veterans Affairs Privacy Service re: Privacy Act Request for Any Self-Employment Plans (2014–2016)) (May 27, 2026), ECF No. 100-2

(continued . . .)

plaintiff comply with Rule 56 and the Court's General Order indicating that "[i]f an opposition fails to include a separate concise statement of genuine disputed issues, or a response to the movant's statement of facts, or specific references to the parts of the record relied upon to support the statement or response, the Court may treat as conceded any such facts asserted in the movant's statement of facts."  General Order for Civil Cases Before the Honorable Reggie B. Walton at 10 (Nov. 7, 2022), ECF No. 4; see Fed. R. Civ. P. 56(e) (noting the same).[6]

Second, the plaintiff appears to argue that the Court's prior Memorandum Opinion and Order granting in part and denying without prejudice in part the defendant's motion for summary judgment was inappropriate because the plaintiff's inability to respond to the defendant's first motion for summary judgment "was the direct result of documented medical incapacity" arising out of an August 2022 stroke, which the plaintiff alleges he "expressly communicated to [the Department's] leadership and government counsel months before the summary[ ]judgment deadline."  Pl.'s Opp'n at 6.  Thus, according to the plaintiff, his "medically documented cognitive impairment" justified relief from the imposition of "strict enforcement of filing deadlines."  Id. at 7.

To the extent that the plaintiff appears to argue that he was entitled to equitable tolling of the deadline to file his opposition to the defendant's original motion for summary judgment, the

---

(. . . continued)

at 54.  However, that request is not properly before this Court in this case, and thus, the Court need not address any of the plaintiff's Privacy Act claims, to the extent they relate to this recent request.

[6] The plaintiff also appears to argue that the Department "provided a Supplemental Statement of Case [ ] in a Court of Veterans Appeals [ ] claim with signed documentation by the newly appointed Director[ of the] Baltimore Regional Office . . . and [the p]laintiff's vocational counselor" making certain representations regarding the Department's actions relating to his veterans benefits claims in 2014 and 2016, but that these "alleged statements were not reported in any of the Secretary's responsive documents submissions[,]" Pl.'s Opp'n at 2–3, which the Court construes to be a challenge to the adequacy of the Department's search for responsive records in this case, to the extent this challenge is before the Court at all.  However, the Court has already entered summary judgment in favor of the defendant as to the adequacy of the Department's search, see Alford, 2025 WL 3140556, at *5–6, and it does not perceive any reason to reconsider its prior conclusions based on this vague reference to recent submissions in another case.

Court is sympathetic to a point.  Indeed, after the plaintiff failed to file his opposition to the defendant's original motion for summary judgment by the June 23, 2025, deadline to do so, see Order at 1–2 (July 1, 2025), ECF No. 89, the Court granted him a nunc pro tunc extension of time to file his opposition on or before August 1, 2025, see Min. Order (July 9, 2025).  However, as discussed above, on November 10, 2025, having not received any submission from the plaintiff, the Court concluded that the defendant had adequately justified some—but not all—of the Department's withholdings, and thus granted in part and denied in part the defendant's motion.  See Order at 1 (Nov. 10, 2025); see generally Alford, 2025 WL 3140556.

And, to the extent that the plaintiff argues that the Court may not now proceed to resolve the defendant's renewed motion for summary judgment, the Court notes that it has granted the plaintiff two separate extensions of time to file his opposition to the defendant's renewed motion for summary judgment, extending the deadline for the filing of his opposition from March 4, 2026, to June 1, 2026.  See Min. Order (Feb. 13, 2026); Min. Order (Mar. 12, 2026); Min. Order (May 1, 2026).  To be sure, the Court—mindful of the need to resolve this long-running matter— "advise[d] the plaintiff that no further extensions [would] be granted absent truly extraordinary circumstances."  Min. Order (May 1, 2026).  However, the plaintiff chose to file his opposition to the defendant's renewed motion for summary judgment rather than request that the Court grant him a third extension of time to respond to the defendant's renewed motion due to his medical circumstances.  Moreover, the plaintiff advances substantive—albeit misplaced— arguments as to why the defendant is not entitled to summary judgment, and thus, the Court does not perceive of any reason to further delay resolution of the pending motion.

Therefore, based on the plaintiff's failure to meaningfully address any of the defendant's arguments, as set forth in the defendant's renewed motion for summary judgment, as well as his

11

failure to address the defendant's factual assertions, the Court will consider the defendant's supplemental statement of facts as "undisputed for purposes of the [defendant's renewed] motion[,]" but will nonetheless only "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the [defendant] is entitled to it . . . ." Fed. R. Civ. P. 56(e).

**B.      Whether the Defendant Properly Withheld the Remaining Records Pursuant to FOIA Exemption 5**

As indicated in its prior Memorandum Opinion, the VA withheld twenty records under FOIA Exemption 5, see generally Suppl. Vaughn Index, which protects from disclosure "inter-agency or intra-agency memorand[a] or letters that would not be available by law to a party other than an agency in litigation with the agency[,]" 5 U.S.C. § 552(b)(5). "Exemption 5 incorporates the privileges that the [g]overnment may claim when litigating against a private party, including" the privilege the defendant asserts in this case, i.e., "the deliberative process privilege." Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898 (D.C. Cir. 2015).

The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news[.]" Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001). Thus, the "privilege shields documents 'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make decisions." Emuwa v. U.S. Dep't of Homeland Sec., 113 F.4th 1009, 1013 (D.C. Cir. 2024) (quoting U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 267 (2021)). "The privilege ensures that 'debate and candid consideration of alternatives within an agency' are not subject to public inspection." Id. (quoting Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 371 (D.C. Cir. 2020)).

12

As previously indicated, the Court has already concluded that the defendant "ha[d] adequately established that the first category of documents, i.e., Documents 0136–0139, 0145–0148, 0217–0220, 0552–0553, 0698–0701, 0713–0716, 0725–0728, 0738–0741, 0786–0789, and 0996–0997, are properly protected from disclosure to the plaintiff by the deliberative process privilege[,]" Alford, 2025 WL 3140556, at *8, and that the defendant "ha[d] provided an adequate explanation of the foreseeable harm that would arise from the disclosure of these withheld records[,]" id. Thus, the Court need only determine whether the Department has adequately established that the remaining records—i.e., the VSC Representative Emails (entries for Bates Nos. 565, 569, 0574–0575, 0578–0579, 0587, 0646–0647); the Supervisory Coach Email (entry for Bates No. 578); and the Response Emails (entries for Bates Nos. 0753–0754, 0757–0758, 0987–0988)—are protected by the privilege.

## 1. Whether the Remaining Records Are Predecisional and Deliberative

"The privilege may only be invoked for documents that are both predecisional and deliberative." Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th 350, 362 (D.C. Cir. 2021) (citing U.S. Fish & Wildlife Serv., 592 U.S. at 268). To be predecisional, a document must have been "generated before the agency's final decision on the matter[.]" Id. (quoting U.S. Fish & Wildlife Serv., 592 U.S. at 268). And, "[a] document is deliberative when it is 'prepared to help the agency formulate its position[,] . . . and it 'reflects the give-and-take of the consultative process[.]'" Id. (internal citations omitted). Thus, to satisfy its burden, the agency "must explain the role [the document] played in administrative decisionmaking—the 'who, what, where, and how' of internal governmental deliberations." Campaign Legal Ctr. v. U.S. Dep't of Just., 34 F.4th 14, 23 (D.C. Cir. 2022) (quoting Jud. Watch, Inc. v. U.S. Dep't of Just., 20 F.4th 49, 57 (D.C. Cir. 2021)). To do so, "the government typically must show 'the roles of the document drafters and recipients[,]' the 'nature of the

13

withheld content[,]' and the 'stage within the broader deliberative process in which the withheld material operates[.]'" Id. (quoting Jud. Watch, 20 F.4th at 56).  And, "the government must explain 'the way in which the withheld material facilitated agency deliberation.'" Id. (quoting Jud. Watch, 20 F.4th at 56).

Although the Court previously concluded that the defendant's original Vaughn index and declarations were not sufficiently specific to allow the Court to conclude that these records were protected by the deliberative process privilege, see Alford, 2025 WL 3140556, at *8, the defendant's renewed motion for summary judgment contains a more fulsome description of the withheld records and the role they played in the Department's deliberative processes.  In support of its claimed exemptions, the defendant has provided: (1) a supplemental Vaughn index, see generally Suppl. Vaughn Index; and (2) a declaration from Christian F. Elkington, Jr., "the Acting Chief of the Freedom of Information Act (FOIA)/Privacy Act (PA) Appeals and Litigation Team," in the VA's Office of General Counsel, see generally Elkington Decl.  Based on the now-supplemented record, the Court concludes for the following reasons that the defendant has satisfied its burden of establishing that the VSC Representative Emails, the Supervisory Coach Email, and the Response Emails are both predecisional and deliberative.

The supplemental Vaughn index represents that the VSC Representative Emails consist of "six records of communications that contain an email sent between" a VSC representative and their immediate supervisor, Def.'s Suppl. Facts ¶ 2, which "outlin[e] steps that VSC and other VA components had taken to address [the plaintiff's] prior requests and its resulting litigation and questioning both whether VSC's prior response was sufficient with regard to the litigation and whether that response would sufficiently address [the plaintiff']s new request[,]" Suppl. Vaughn Index at 2–5 (entries for Bates Nos. 565, 569, 0574–0575, 0578–0579, 0587, 0646–

14

0647).  The supplemental Vaughn index also represents that the Supervisory Coach Email is a single "communication containing withheld information in an email between the supervisory coach for the VSC representative and the next level of supervisors within the VA[,]" Def.'s Suppl. Facts ¶ 3, which relayed the VSC representative's questions for their consideration and "for their direction as to what VA office would be responsible for the processing of [the] FOIA requests at issue in this litigation[,]" Suppl. Vaughn Index at 4 (entry for Bates No. 0578).  With this additional information, the defendant has satisfied its burden of showing that these records are predecisional and deliberative because it has sufficiently explained how these communications preceded the defendant's response to the plaintiff's request and how these communications were "prepared to help the agency formulate its position[,] . . . and [ ] 'reflect[] the give-and-take of the consultative process[,]'" as the defendant evaluated the appropriate course of action to take in response to the plaintiff's new request, including by evaluating the adequacy of the defendant's responses to his prior requests.  Reps. Comm. for Freedom of the Press, 3 F.4th 350 at 362 (internal citations omitted).

The defendant also withheld the Response Emails, which contain an email thread between VR&E employees and their supervisor regarding "edits to a draft response" to the Northeast VBA Director regarding the status of the plaintiff's benefits request.  See Def.'s Suppl. Facts ¶ 4; see also Suppl. Vaughn Index at 7–9 (entries for Bates Nos. 0753–0754, 0757–0758, 0987–988).  According to the supplemental Vaughn index, the draft response, which was prepared by the subordinate employees, contains redline edits and comments by their supervisor, and the email thread reflects a back-and-forth exchange seeking clarification and striking or altering words in the draft response.  See Suppl. Vaughn Index at 7–9 (entries for Bates Nos. 0753–0754, 0757–0758, 0987–988).  The supplemental Vaughn index also makes clear that the

15

plaintiff has received the final version of the response.  See id.  The defendant has also satisfied

its burden of showing that the Response Emails are predecisional and deliberative because: (1)

the communications and draft response predated the defendant's decision in response to the

plaintiff's benefits request, see Reps. Comm. for Freedom of the Press, 3 F.4th at 362 (citing

U.S. Fish & Wildlife Serv., 592 U.S. at 268); and (2) the records reflect subordinate

recommendations and deliberations regarding how to respond to the plaintiff's request, which

ultimately informed the finalized response that was issued to the plaintiff, see Machado Amadis,

971 F.3d at 370 (noting that "recommendations from subordinates to superiors lie at the core of

the deliberative-process privilege") (citation omitted).

### 2.  Whether the Defendant Has Demonstrated Foreseeable Harm

Having concluded that the remaining records are protected by the deliberative process

privilege and therefore FOIA Exemption 5, the Court must next determine whether the defendant

has satisfied its burden of showing that release of these remaining records would cause

foreseeable harm.

Congress adopted the foreseeable harm requirement to prevent "the withholding of

material unless the agency can 'articulate both the nature of the harm [that would result from its

release] and the link between the specified harm and specific information contained in the

material withheld.'"  Reps. Comm. for Freedom of the Press, 3 F.4th at 369 (quoting H.R. Rep.

No. 114-391, at 9 (2016)).  Thus, the foreseeable harm requirement "impose[s] an independent

and meaningful burden on agencies."  Ctr. for Investigative Reporting v. U. S. Customs &

Border Prot., 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citation omitted).  And, although this

requirement applies to any invocation of a FOIA Exemption, "Congress added the distinct

foreseeable harm requirement" specifically to limit "increasing agency overuse and abuse of

Exemption 5 and the deliberative process privilege."  Reps. Comm for Freedom of the Press, 3

F.4th at 369 (citing H.R. Rep. No. 114-391, at 9–10).  Accordingly, in the context of Exemption 5, an agency must offer a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  Id. at 370.  This burden is "context specific[,]" id. (citations omitted), and the agency may not rely on "cookie-cutter formulations" of harm, see id. at 371.  However, as another member of this Court has noted, "the line between an adequate and inadequate explanation is often a fine one, which can turn on the breadth of the materials grouped together in a single category and a commonsense assessment of when the disclosure of deliberative materials is likely to impede future agency deliberations."  Blade v. U.S. Dep't of Lab., No. 20-cv-2591 (RDM), 2024 WL 4664453, at *25 (D.D.C. Nov. 4, 2024).

This Court previously concluded that the defendant had failed to demonstrate the foreseeable harm that would be caused by release of the VSC Representative Emails, the Supervisory Coach Email, and the Response Emails, because the original Vaughn index and the accompanying agency declaration were

> devoid of any information about the foreseeable harm that would be caused by disclosure of correspondence and draft correspondence between agency employees regarding the status of one of the plaintiff's benefits requests or seeking guidance on how the agency should proceed regarding the plaintiff's requests for records, such as which VA office would be responsible for processing that request or providing status updates regarding the plaintiff's request.

Alford, 2025 WL 3140556, at *9.  Instead, the original Vaughn index merely stated that the disclosure of these records "would have a chilling effect on all members of the Department, inhibit further frank discussions important to the functioning of the executive branch, and cause confusion."  See, e.g., Vaughn Index at 4.

17

Now, the defendant argues that disclosure of these records would result in reasonably foreseeable harm because it would (1) have a chilling effect on internal discussions regarding responding to FOIA requests and veterans' benefits determinations, see Def.'s Mot. at 13; and (2) it would result in public confusion and "risk exposing the VA to criticism and potential false liabilities" based on misunderstandings of how the agency processes those requests and arrives at its decisions, see id. at 14. For the following reasons, the Court is now satisfied that the defendant's supplemented foreseeable harm explanations for the VSC Representative Emails, the Supervisory Coach Email, and the Response Emails are sufficient.[7]

Specifically, the supplemental Vaughn index represents that the release of the VSC Supervisor Emails and the Supervisory Coach Email "would have a chilling effect on members of the VA that review and respond to FOIA and other information requests, inhibiting further frank discussions important to the functioning of the VA and the executive branch." Suppl. Vaughn Index at 2–5, 7–9 (entries for Bates Nos. 565, 0574–0575, 0578, 0578–0579, 0587, 0753–0754, 0757–0758, 0987–9888). That would occur, according to the defendant, because such disclosure of predecisional deliberative communications "would expose the VA to unnecessary public judgment of predecisional discussions as to the agency's [allocation] of its resources in responding to a FOIA request that is pending litigation or that may soon be pending litigation[,]" and "would, not only lead to public confusion, but also risk the agency's subjection to criticism and potential false liabilities, should the public question the VA's discussions regarding its response to the FOIA requests at issue in these communications and believe that these same discussions were happening in response to other FOIA requests." Id. at 2–5; see id.

---

[7] The Court notes that, despite the Court's prior Order, the Elkington Declaration itself provides no further detail and merely indicates that the supplemental Vaughn index contains "additional information describing . . . how release of the [remaining records] would pose a foreseeable harm to the [a]gency." Elkington Decl. ¶ 15. Thus, the Court must rely solely on the representations made in the supplemental Vaughn index.

at 7–9 (noting same concerns).  Thus, according to the defendant, "[t]hose involved in regularly

discussing the VA's responses to FOIA requests would, therefore, be discouraged from engaging

in that decision-making process in the future, at the expense of ensuring the agency's response to

future FOIA requests are prepared efficiently, with proper assistance, guidance, and in

compliance with all regulations and laws."  Id.

Similarly, the defendant argues that release of the Response Emails would have a chilling

effect because "these records reflect the agency's internal assessment of a [Clear and

Unmistakable Error ('CUE')] challenge to a prior benefits decision, but does not reflect the VA's

ultimate decision as to the merits of that CUE challenge[,]" and thus release would cause "public

confusion."  Suppl. Vaughn Index at 7–9 (entries for Bates Nos. 0753–0754, 0757–0758, 0987–

988).  Moreover, the defendant represents that disclosure

> would risk exposing the VA to criticism and potential false liabilities should the
> public question the VA's internal predecisional assessments and believe that this
> assessment applies to other similar CUE challenges, even if the VA later rejected
> its internal predecisional assessment, or deemed it incorrect or inconsistent with
> accepted agency policy and or governing law.

Id.  Thus, according to the defendant, if the Response Emails are released, "those involved in

discussing the VA's response to CUE challenges and other similar reviews of benefits decisions

would be discouraged from engaging in that decision making process in the future."  Id.

These justifications go beyond the "perfunctory, sweeping, and undifferentiated" claims

that disclosure of a wide range of records withheld would have a chilling effect on undescribed

"full and frank discussions" that the D.C. Circuit has rejected.  Reps. Comm. for Freedom of the

Press, 3 F.4th at 372.  Although the defendant's justifications remain somewhat cursory, the VA

has explained: (1) the role that these limited sets of records "play in the relevant agency

decisional processes[,]" id., i.e., how the particular predecisional communications at issue

informed the deliberations regarding how to respond to the plaintiff's FOIA request and CUE challenge; and (2) how disclosure of those records "would harm similar deliberations in the future[,]" id., by discouraging VA employees and their supervisors from engaging in candid deliberations over how to respond to FOIA requests and CUE challenges. Given the narrow scope of the categories of records still at issue in this case and the defendant's particularized explanation of the chilling effect that disclosure of these records would create, the Court concludes that the defendant has satisfied its burden of demonstrating the foreseeable harm that would result from disclosure of these records.[8]

**C.      Whether the Defendant Has Established That It Has Provided to the Plaintiff All Reasonably Segregable Portions of the Records Withheld Pursuant to FOIA Exemption 5**

Finally, the Court addresses whether the defendant has provided all reasonably segregable records to the plaintiff that were withheld pursuant to FOIA Exemption 5. Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b); see also Roth v. U.S. Dep't of Just., 642 F.3d 1161, 1167 (D.C. Cir. 2011) ("[E]ven if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." (alteration in original) (citation omitted)). Thus, "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (alteration in original) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)).

---

[8] Because the Court concludes that the defendant has adequately demonstrated that disclosure of these records would have a chilling effect on the agency's decision-making processes, it need not address the defendant's argument that disclosure would cause "public confusion" regarding its responses.

20

Accordingly, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

In order to assess segregability, a "district court must be provided with a 'relatively detailed description' of the withheld material." Jud. Watch, Inc. v. U.S. Dep't of Def., 245 F. Supp. 3d 19, 36 (D.D.C. 2017) (Walton, J.) (citing Goldberg v. U.S. Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987)). To comply with this requirement, "[a]gencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether 'the result would be an essentially meaningless set of words and phrases.'" Id. at 36 (citing Mead Data Ctr., 566 F.2d at 261). "[T]o show that an entire document cannot be produced[,]" an agency must conduct "[a] 'document-by-document' review and [provide] a declaration that each piece of information that is withheld is not reasonably segregable[.]" Id. at 36–37 (citing Juarez v. Dep't of Just., 518 F.3d 54, 61 (D.C. Cir. 2008)). Although "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" Ecological Rts. Found. v. U.S. Env't Prot. Agency, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (quoting Sussman, 494 F.3d at 1117), an "agency must provide a detailed justification for [the exempt material's] non-segregability," id. (quoting Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002)) (internal quotation marks omitted) (alterations in original). Generally, "[a]ffidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a Vaughn index describing the withheld record, suffice." Id. (quoting Johnson, 310 F.3d at 776). However, the Vaughn index "must provide a

21

particularized explanation of non-segregability for <u>each</u> document." <u>Ctr. for Biological Diversity v. U.S. Env't Prot. Agency</u>, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).

Previously, the Court concluded that the defendant had not adequately shown that it satisfied its obligation to disclose segregable material contained in the records withheld pursuant to FOIA Exemption 5. <u>See</u> <u>Alford</u>, 2025 WL 3140556, at *10. Specifically, the Court noted that, far from providing a "detailed justification" for non-segregability, <u>id.</u> (quoting <u>Ecological Rts. Found.</u>, 541 F. Supp. 3d at 66), the Hinton Declaration merely stated that "all segregable information was provided[,]" <u>id.</u> (quoting Hinton Decl. ¶ 14), and that the original <u>Vaughn</u> index "only once reference[d] segregability, and d[id] so only in passing[,]" <u>id.</u> (citing <u>Vaughn</u> Index at 2) (stating that "[a]ll portions of this unfinalized, draft document which are not reasonably segregable, have been withheld" pursuant to the deliberative process privilege). Moreover, the defendant had not represented, either in its supporting declarations or the <u>Vaughn</u> index, "that any non-exempt, factual portions of these records or correspondence are 'inextricably intertwined with [the] exempt portions' of those records[.]" <u>Id.</u>

The Elkington Declaration and supplemental <u>Vaughn</u> index now clearly indicate that "a particularized review was performed of each document to determine which parts of that document could be reasonably segregable for release." Def.'s Mot. at 15 (citing Suppl. <u>Vaughn</u> Index). Specifically, the Elkington Declaration represents that, after conducting a line-by-line review, the defendant concluded that it had released all reasonably segregable information in records 0565, 0569, 0574–0575, 0578, 0578–0579, 0646–0647, 0753–0754, 0757–0758, and 0987–0988, and that "all remaining factual material that has been withheld is inextricably intertwined with deliberative material such that releasing it would result in [the] release of a few

22

additional sets of meaningless words and phrases that would not add context to what is already known about this document."  Elkington Decl. ¶ 16.

The Elkington Declaration further represents that the defendant reviewed the remaining records listed in the supplemental Vaughn index and similarly concluded that it had released all reasonably segregable information, including "certain dates, email signatures, office titles[,] and factual information that is not being deliberatively discussed[,]" see, e.g., Suppl. Vaughn Index at 1 (entries for Bates Nos. 0136–0139), but withheld "certain dates or decision titles" because that information "is inextricably intertwined with the deliberative material at issue[,] as it is under debate between [agency decisionmakers] and subordinate employees as to whether it is prudent, sufficiently relevant[,] and compliant with prevailing law and agency policy such that it should be included in the proposed response[,]" see, e.g., id.  In other words, according to the defendant, those dates and decision titles that were withheld were "inextricably intertwined" with the agency's deliberative process in evaluating its actions in response to the plaintiff's claims and its decision as to how to select factual information to inform the drafting of its response to the plaintiff.  Wilderness Soc'y, 344 F. Supp. 2d at 18 (quoting Mead Data Cent., Inc., 566 F.2d at 260).

Based on these supplemental representations, the supplemental Vaughn index's more detailed and document-specific withholding justifications, and the absence of anything in the record calling into question "the good-faith presumption afforded" to the defendant's declarations, Wright v. U.S. Dep't of Just., 121 F. Supp. 3d 171, 188 (D.D.C. 2015), the Court is now convinced that the defendant has satisfied its obligation to produce all reasonably segregable portions of the records withheld pursuant to FOIA Exemption 5, see id. at 187 (noting

23

that "[a]n affidavit attesting to the performance of a review of the documents and a <u>Vaughn</u>

index describing each document satisfies the FOIA's segregability requirement") (listing cases).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's renewed

motion for summary judgment.

**SO ORDERED** this 28th day of July, 2026.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.